Pages 1 - 11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE LAUREL BEELER, MAGISTRATE JUDGE

```
UBER TECHNOLOGIES, INC.,      )
                              )
            Plaintiff,        )
                              )
    v.                        )   NO. C 15-00908 LB
                              )
JOHN DOE I, AN INDIVIDUAL,    )
                              )
            Defendant.        )   San Francisco, California
_____)   Thursday, March 12, 2015
```

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING OF PROCEEDINGS**

FTR 12:52 p.m. - 1:08 p.m. =  16 minutes

**APPEARANCES**:

For Plaintiff:           Perkins Coie LLP
                         3150 Porter Drive
                         Palo Alto, California  94304
                  BY:    **JAMES G. SNELL, ESQ.**
                         (by telephone conference)

Transcribed by:          Leo T. Mankiewicz, Transcriber
                         leomank@gmail.com
                         (415) 722-7045

1    Thursday, March 12, 2015
2                                                              12:52 p.m.
3                        P R O C E E D I N G S
4         **THE CLERK:** Calling civil action C15-0908, Uber
5    Technologies, Inc. versus Doe.
6         **MR. SNELL:** Good afternoon, your Honor. Jim Snell
7    from Perkins Coie for plaintiff Uber.
8         **THE COURT:** I'm sorry to make you cool your heels on
9    the phone for so long. So we're going to do this one --
10        **MR. SNELL:** I always learn something, your Honor.
11        **THE COURT:** So do I. So do I.
12        We're going to do this one on the record, Lashonda,
13   just because I usually do case management off, but this is
14   discovery, and since it's *ex parte*.
15        I just -- just in case there are any issues, I think
16   you should get the early discovery. So don't think that
17   I don't think that. It's fine, expedited early discovery.
18   I just had some -- probably some dumb questions, because this
19   is certainly well within the sort of normal landscape of things
20   that I've ordered before, fine, within what the law permits,
21   fine.
22        Some of my very basic questions were, because I looked
23   at the subpoena -- and I need to pull it out to look at it
24   again. Sorry, I need to regroup my thoughts. There's the
25   subpoena.

1 So when I look at what you're -- obviously, and
2 everything you said in your declaration was sufficient to get
3 what you want. You basically have identified an IP address --
4 and let me just look at my notes again, sorry. So I felt a
5 little disjointed. I did not expect this to be -- people piled
6 on my criminal calendar, and it was a busy day.
7 **MR. SNELL:** Take your time, your Honor.
8 **THE COURT:** So you noticed the sort of unfamiliar IP
9 address. You noticed it on the specific day in question,
10 May 12th, and my question is, when you then asked GitHub,
11 which -- perhaps embarrassingly, perhaps normally I just looked
12 up on -- I mean, I'd heard of it, but I just looked it up on
13 Wikipedia. Then you asked GitHub for a time period for records
14 from March 14th to September 14th identifying the IP address
15 that accessed the specific post at issue, and it just raised
16 for me this feeling of, like, what...
17 So normally, in these sorts of things, I would say,
18 you're entitled to -- my reaction was, I don't really know how
19 this works. Probably when you get your tech people and the
20 lawyers together to talk about it, you could figure out what
21 the right way is to get you the information, but this seems
22 like it was potentially asking for a lot of things not --
23 beyond just the IP address that you don't recognize, that
24 accessed -- that you've identified.
25 Does that make sense? You would think, if you had the

1  IP address, you could just ask GitHub to give you whatever
2  identifying information that is connected with that IP address,
3  instead of asking for everybody -- information on everybody who
4  viewed the relevant posts.  But I don't know what the posts
5  are.  I don't really understand too much what GitHub does
6  except in a very broad sense.  I don't understand what burden
7  this would be.
8      And then, finally, practical implications, almost all
9  of these discovery orders have sort of way call the Doe
10 protections, like, hey, hey, if you have an issue, file a
11 motion to quash within this period of time, otherwise GitHub
12 has to produce the information, and that seems hard to do with
13 all of this information you're asking for.
14     **MR. SNELL:**  Yeah, let me try to -- those aren't dumb
15 questions, here.  This has taken a while, you know, for us as a
16 part of the investigation to sort of figure out what's been
17 going on.
18     The IP address that we identified was an IP address
19 that actually accessed the database, and we were not able to
20 tell from that IP address the identity of the user --
21     **THE COURT:**  I understand that part of it.
22     **MR. SNELL:**  Yeah.  We were able, through our
23 investigation, to determine that we think the person who
24 accessed the database with the IP address that we weren't able
25 to identify had also visited these URLs on GitHub, and the

1   URLs, if you read them in the subpoena, you know, they're
2   not -- this is not like yahoo.com.  They're buried within the
3   GitHub website.
4            We expect that what we will find from GitHub if we
5   subpoena the information is that the touches on those URLs are
6   Uber-to-Uber touches, except for the information about whoever
7   accessed our database.
8            So it's not enough just to try to get from GitHub
9   something about the IP address that was used to access our
10  separate database.  What we really want to know is who was
11  looking at those posts, because we think by looking at those
12  posts, they are the people who accessed the database, if that
13  makes sense.
14           **THE COURT:**  Well, sort of.  So let me just think about
15  this.  So what are the posts, just out of curiosity?
16           **MR. SNELL:**  So GitHub is a site where you can post
17  code, or portions of code, and iterate the code with other
18  software engineers.  So these posts are places where portions
19  of code have been put for folks at Uber to work on together,
20  and --
21           **THE COURT:**  I see, I see, I see.  So let me just think
22  about that.  So this is actually kind of a hosting platform
23  where persons at Uber can work on the code together,
24  collaboratively.
25           **MR. SNELL:**  Exactly, and it's not limited to Uber.

1    GitHub is a site that serves --
2             **THE COURT:** Right, exactly.
3             **MR. SNELL:** -- all sorts of companies.
4             **THE COURT:** Exactly. Exactly. But these particular
5    posts are Uber posts.
6             **MR. SNELL:** Yes. Yes, they are.
7             **THE COURT:** Okay. So therefore, there are people --
8    the people who would access these posts, which are for -- are
9    people who are working on Uber code, and you think that what
10   probably happened is somebody -- let me just think for a
11   second.
12            So one theory might be, it's -- whoever did this is
13   someone related with Uber, they did the bad thing to you by an
14   IP address, but you noted that IP address accessed -- well,
15   maybe or maybe not, but -- accessed these posts that are
16   Uber-related. But why do you...
17            So explain to me again why you couldn't, as a first
18   step, just ask to isolate just the -- whatever you call -- the
19   unknown IP address? Is that too much work for GitHub?
20   I mean...
21            **MR. SNELL:** Your Honor, the IP address, so there's --
22   the database that was accessed and from which the information
23   was taken is not the GitHub database.
24            **THE COURT:** No, I understand that.
25            **MR. SNELL:** Yeah, it's an Uber database, and from that

1  database, Uber can tell the IP address that accessed the data.
2  It's -- but using that IP address, it can't tell --
3          **THE COURT:** Oh.
4          **MR. SNELL:** -- who accessed the data. It has been
5  able, in its investigation -- and your Honor, I'm trying to
6  balance, you know, ongoing investigation and limiting public
7  disclosure of information, but also satisfying your request,
8  but if you look at the declaration from Alex Garbutt, there has
9  been a connection between, you know, the person who accessed
10 the Uber database and these GitHub posts, and we think the
11 person who accessed the Uber database had also visited these
12 GitHub posts. They may have the same IP address, we suspect it
13 will be a different IP address, but we think what we'll be able
14 to do from the information from GitHub is determine which IP
15 addresses are Uber-related and eliminate those, and identify
16 the IP address that we think is the offending party.
17         **THE COURT:** So could I ask you -- I totally
18 understand. So I'm just mostly trying to figure out the burden
19 on GitHub. So it seems, if you -- you've asked for all the IP
20 addresses and/or subscribers that accessed these posts, date
21 and time of access, modification, records or metadata, log --
22 all that stuff. So that seems like you're asking for a lot.
23 What's the work -- and really, what you're doing is you want to
24 sift through some of these things and sort out who the unknown
25 IP address belongs to.

1          So it seems to me that you are grabbing a lot of data
2     there, when you're asking for GitHub to I.D. not just the IP
3     addresses, that seems pretty easy, but subscribers, that seems
4     potentially harder.  I was just trying to figure out whether
5     there was a more iterative process that would be easier.
6          That was, like, the first thing, and I thought, well,
7     maybe I could build in a meet-and-confer process so GitHub
8     would have to talk with you about any burden issues with
9     the....  You know, the purpose of all of this is getting you
10    the information that you're rightfully entitled to; because
11    I just couldn't really figure out how it would work, except to
12    say, well, wow, that could be a big capture of information.
13         And then it also struck me that potentially, you know,
14    that almost every single one of these orders that gets issued
15    basically says, you can serve the subpoena, GitHub has, you
16    know, X period of time to respond, you know, usually it's 30
17    days or something, or to file a motion to quash, but I usually,
18    instead of a motion to quash, I prefer to include maybe a joint
19    process to address burden issues, and then if you don't have
20    information identifying the person and don't need to -- so
21    normally, too -- I'm sorry, I'm not being very linear, but
22    normally, GitHub has a time period to sort of let the John Does
23    know, which maybe isn't appropriate here, for -- but so they
24    could file a motion to quash.  But then it seems like there
25    could be a lot of potential subscribers here, and so that

1   didn't necessarily make any sense, as part of the normal
2   process, but it didn't seem right that I should necessarily
3   haul out a lot of information about everybody -- have to notify
4   a lot of people who aren't going to be relevant to your
5   investigation.
6          So I was really trying to figure out a process to get
7   you what you want, because you said why you should get it, but
8   with a process that actually makes sense, but that includes the
9   ordinary protections that usually attach to these John Doe
10  subpoenas, that someone can move to quash it, which would be
11  likely denied, right, but the whole nature of the *ex parte*
12  process -- because you're entitled to the information, you
13  really are.
14         Does that make sense?  Because that's I was thinking.
15         **MR. SNELL:**  It makes sense, and we walked through a
16  lot of the same thinking.  I mean, we tried to limit our
17  request to exactly what we think we need.  I think the problem
18  is, we're not sure what's there.
19         **THE COURT:**  Yeah.
20         **MR. SNELL:**  So GitHub does have a login feature, so it
21  may be that there's -- that GitHub can identify...  Well, first
22  of all, we don't think there's going to be a lot of hits on
23  these URLs --
24         **THE COURT:**  Okay.
25         **MR. SNELL:**  -- or at least, if there are a lot of

1  hits, they're Uber hits.  So we don't think there's a danger
2  here, like you see in other cases, of, you know, bringing in a
3  lot of parties who have nothing to do with this issue, and we
4  tried to think through ways to limit that.
5         But we also tried to really target the subpoena to
6  seek what we think GitHub may have, without being overly
7  burdensome.
8         So the time frame is the time frame that the posts
9  were there.  We sought IP addresses and subscriber information
10 because we know that GitHub should probably have both of those
11 things, and then we sought device information as well, because
12 there may be, you know, you need to identify the sort of things
13 that --
14        **THE COURT:**  Okay.  I get it, I get it.  So I'm going
15 to do my best -- I mean, I'm going to tweak my normal order to
16 basically, just basically, build in maybe some kind of a
17 meet-and-confer process with you and GitHub to address burden
18 concerns; I mean, with the idea that, you know, you guys can
19 come up with some sort of an iterative process that makes
20 sense, but that based on some of the things that you said, you
21 don't expect a lot of hits, et cetera, et cetera, so it
22 hopefully will all be fine.  Hopefully, I'll write something a
23 little bit more elegant than that, but it's essentially a
24 get-what-you-want.  Okay.
25        **MR. SNELL:**  Thanks, your Honor.  I would suggest,

1  I think we could follow the normal -- the normal rules.  If the
2  Court allows a subpoena to be served, we would serve it within
3  the time limits considered under the rules, and as your Honor
4  knows, we're on the other side of these from time to time and
5  have been in front of you on the other side of these, so we're
6  happy to follow the normal meet-and-confer process again, if
7  that should be necessary, as well.
8       **THE COURT:**  Perfect.  And it may not be.  If you're
9  right, if there are not a lot of hubs, if it's all sort of
10 recognizable how they keep track of this stuff, the idea is
11 this is the relevant time period where these hubs are accessed,
12 and then you could just sort of see if -- what information it
13 gives you.  Maybe it just won't be a big deal.  I just was very
14 practically trying to think about how it would work.
15      Okay, good.  Well, I really appreciate your being
16 available to talk this through with me, and I'll get out the
17 order today or tomorrow.
18      **MR. SNELL:**  Great.  Thank you very much, and my
19 pleasure.
20      **THE COURT:**  Okay, good.  Thanks, bye.
21      **MR. SNELL:**  Bye-bye.
22      1:08 p.m.
23      ---o0o---
24
25

**CERTIFICATE OF TRANSCRIBER**

I, Leo Mankiewicz, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____  03/25/2015
Signature of Transcriber        Date