# EXHIBIT A

# Uber Got Hacked Because It Left Its Security Key Out In Public



Kelsey Campbell-Dollaghan
Filed to: UBER     3/03/15 11:30am



Remember how Uber, in a Friday night post last week, admitted that the names and personal info of 50,000 drivers had been accessed by an unknown party? Well, Ars Technica has an update. A sad update.

According to Ars, Uber seems to have made the most rookie security mistake of them all, which Dan Goodin calls "the online equivalent of stashing a house key under a doormat." It looks like Uber accidentally stored a secure database key—intended for use only by select employees—on a publicly accessible GitHub page. The access key led to a database where drivers' names and license numbers were stored, and was obviously never intended to be public. Once the company realized its database had been breached in May of last year, it changed the key and took the GitHub page offline.

Though Uber hasn't publicly confirmed what was on GitHub or who was responsible, it's implying it by subpoenaing GitHub in an effort to get ahold of the IP address of anyone who might have accessed the GitHub page over seven months in 2014 (which GitHub has already refused to do). The Register has the subpoena and the details, and points out that even if GitHub hands over that info, it'll be extremely lucky if it leads to anything:

> *In other words, Uber hopes it will find an online breadcrumb trail from the gist to whoever hacked its systems. Quite why Uber has waited more than five months to subpoena GitHub is unclear, and the taxi-booking biz has refused to explain the delay.*

If Uber really did put its security key on a public site that's an extraordinarily presumptuous move, though it's really all that Uber can do at this point. I've reached out to Uber and will update when I hear back, and we'll find out soon enough whether GitHub will stick to its guns. Either way, come on, guys.

[Ars Technica, The Register]

---

*Contact the author at kelsey@Gizmodo.com.*



**WHYWOULDYOUDOTHAT** ▸ Kelsey Campbell-Dollaghan
3/03/15 11:56am

> *Uber accidentally*

Is that what we call lazy system administrating now these days?

> *secure database key—intended for use only by select employees*

Because we put all sensitive data on public accessible servers, right?

> *The access key led to a database where drivers' names and license numbers were stored*

I smell lawsuits

# EXHIBIT B

Pages 1 - 11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE LAUREL BEELER, MAGISTRATE JUDGE

| | | |
|---|---|---|
| UBER TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. C 15-00908 LB |
| | ) | |
| JOHN DOE I, AN INDIVIDUAL, | ) | |
| | ) | |
| Defendant. | ) | San Francisco, California |
| | ) | Thursday, March 12, 2015 |

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING OF PROCEEDINGS**

FTR 12:52 p.m. - 1:08 p.m. = 16 minutes

**APPEARANCES**:

For Plaintiff:		Perkins Coie LLP
			3150 Porter Drive
			Palo Alto, California  94304
		BY:	**JAMES G. SNELL, ESQ.**
			(by telephone conference)

Transcribed by:		Leo T. Mankiewicz, Transcriber
			leomank@gmail.com
			(415) 722-7045

| | |
|---|---|
| 1 | <u>Thursday, March 12, 2015</u> |
| 2 | <u>12:52 p.m.</u> |
| 3 | P R O C E E D I N G S |
| 4 | **THE CLERK:** Calling civil action C15-0908, Uber |
| 5 | Technologies, Inc. versus Doe. |
| 6 | **MR. SNELL:** Good afternoon, your Honor. Jim Snell |
| 7 | from Perkins Coie for plaintiff Uber. |
| 8 | **THE COURT:** I'm sorry to make you cool your heels on |
| 9 | the phone for so long. So we're going to do this one -- |
| 10 | **MR. SNELL:** I always learn something, your Honor. |
| 11 | **THE COURT:** So do I. So do I. |
| 12 | We're going to do this one on the record, Lashonda, |
| 13 | just because I usually do case management off, but this is |
| 14 | discovery, and since it's *ex parte*. |
| 15 | I just -- just in case there are any issues, I think |
| 16 | you should get the early discovery. So don't think that |
| 17 | I don't think that. It's fine, expedited early discovery. |
| 18 | I just had some -- probably some dumb questions, because this |
| 19 | is certainly well within the sort of normal landscape of things |
| 20 | that I've ordered before, fine, within what the law permits, |
| 21 | fine. |
| 22 | Some of my very basic questions were, because I looked |
| 23 | at the subpoena -- and I need to pull it out to look at it |
| 24 | again. Sorry, I need to regroup my thoughts. There's the |
| 25 | subpoena. |

|   |   |
|---|---|
| 1 | So when I look at what you're -- obviously, and |
| 2 | everything you said in your declaration was sufficient to get |
| 3 | what you want.  You basically have identified an IP address -- |
| 4 | and let me just look at my notes again, sorry.  So I felt a |
| 5 | little disjointed.  I did not expect this to be -- people piled |
| 6 | on my criminal calendar, and it was a busy day. |
| 7 | **MR. SNELL:**  Take your time, your Honor. |
| 8 | **THE COURT:**  So you noticed the sort of unfamiliar IP |
| 9 | address.  You noticed it on the specific day in question, |
| 10 | May 12th, and my question is, when you then asked GitHub, |
| 11 | which -- perhaps embarrassingly, perhaps normally I just looked |
| 12 | up on -- I mean, I'd heard of it, but I just looked it up on |
| 13 | Wikipedia.  Then you asked GitHub for a time period for records |
| 14 | from March 14th to September 14th identifying the IP address |
| 15 | that accessed the specific post at issue, and it just raised |
| 16 | for me this feeling of, like, what... |
| 17 | So normally, in these sorts of things, I would say, |
| 18 | you're entitled to -- my reaction was, I don't really know how |
| 19 | this works.  Probably when you get your tech people and the |
| 20 | lawyers together to talk about it, you could figure out what |
| 21 | the right way is to get you the information, but this seems |
| 22 | like it was potentially asking for a lot of things not -- |
| 23 | beyond just the IP address that you don't recognize, that |
| 24 | accessed -- that you've identified. |
| 25 | Does that make sense?  You would think, if you had the |

1    IP address, you could just ask GitHub to give you whatever
2    identifying information that is connected with that IP address,
3    instead of asking for everybody -- information on everybody who
4    viewed the relevant posts.  But I don't know what the posts
5    are.  I don't really understand too much what GitHub does
6    except in a very broad sense.  I don't understand what burden
7    this would be.
8            And then, finally, practical implications, almost all
9    of these discovery orders have sort of way call the Doe
10   protections, like, hey, hey, if you have an issue, file a
11   motion to quash within this period of time, otherwise GitHub
12   has to produce the information, and that seems hard to do with
13   all of this information you're asking for.
14           **MR. SNELL:**  Yeah, let me try to -- those aren't dumb
15   questions, here.  This has taken a while, you know, for us as a
16   part of the investigation to sort of figure out what's been
17   going on.
18           The IP address that we identified was an IP address
19   that actually accessed the database, and we were not able to
20   tell from that IP address the identity of the user --
21           **THE COURT:**  I understand that part of it.
22           **MR. SNELL:**  Yeah.  We were able, through our
23   investigation, to determine that we think the person who
24   accessed the database with the IP address that we weren't able
25   to identify had also visited these URLs on GitHub, and the

| | |
|---|---|
| 1 | URLs, if you read them in the subpoena, you know, they're |
| 2 | not -- this is not like yahoo.com.  They're buried within the |
| 3 | GitHub website. |
| 4 | We expect that what we will find from GitHub if we |
| 5 | subpoena the information is that the touches on those URLs are |
| 6 | Uber-to-Uber touches, except for the information about whoever |
| 7 | accessed our database. |
| 8 | So it's not enough just to try to get from GitHub |
| 9 | something about the IP address that was used to access our |
| 10 | separate database.  What we really want to know is who was |
| 11 | looking at those posts, because we think by looking at those |
| 12 | posts, they are the people who accessed the database, if that |
| 13 | makes sense. |
| 14 | **THE COURT:**  Well, sort of.  So let me just think about |
| 15 | this.  So what are the posts, just out of curiosity? |
| 16 | **MR. SNELL:**  So GitHub is a site where you can post |
| 17 | code, or portions of code, and iterate the code with other |
| 18 | software engineers.  So these posts are places where portions |
| 19 | of code have been put for folks at Uber to work on together, |
| 20 | and -- |
| 21 | **THE COURT:**  I see, I see, I see.  So let me just think |
| 22 | about that.  So this is actually kind of a hosting platform |
| 23 | where persons at Uber can work on the code together, |
| 24 | collaboratively. |
| 25 | **MR. SNELL:**  Exactly, and it's not limited to Uber. |

```
 1   GitHub is a site that serves --
 2           THE COURT:  Right, exactly.
 3           MR. SNELL:  -- all sorts of companies.
 4           THE COURT:  Exactly.  Exactly.  But these particular
 5   posts are Uber posts.
 6           MR. SNELL:  Yes.  Yes, they are.
 7           THE COURT:  Okay.  So therefore, there are people --
 8   the people who would access these posts, which are for -- are
 9   people who are working on Uber code, and you think that what
10   probably happened is somebody -- let me just think for a
11   second.
12           So one theory might be, it's -- whoever did this is
13   someone related with Uber, they did the bad thing to you by an
14   IP address, but you noted that IP address accessed -- well,
15   maybe or maybe not, but -- accessed these posts that are
16   Uber-related.  But why do you...
17           So explain to me again why you couldn't, as a first
18   step, just ask to isolate just the -- whatever you call -- the
19   unknown IP address?  Is that too much work for GitHub?
20   I mean...
21           MR. SNELL:  Your Honor, the IP address, so there's --
22   the database that was accessed and from which the information
23   was taken is not the GitHub database.
24           THE COURT:  No, I understand that.
25           MR. SNELL:  Yeah, it's an Uber database, and from that
```

## **CERTIFICATE OF TRANSCRIBER**

I, Leo Mankiewicz, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____  03/25/2015
Signature of Transcriber         Date