BOERSCH SHAPIRO LLP
David W. Shapiro (State Bar No. 219265)
Dshapiro@boerschshapiro.com
Martha Boersch (State Bar No. 126569)
Mboersch@boerschshapiro.com
Lara Kollios (State Bar No. 235395)
Lkollios@boerschshapiro.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorneys for Subscriber

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UBER TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOE I, <br><br> Defendant. | Case No. C 15-00908-LB <br><br> **REPLY IN SUPPORT OF SUBSCRIBER'S MOTION TO QUASH COMCAST SUBPOENA** <br><br> **REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED** <br><br> Date:  July 9, 2015 <br> Time:  9:30 am |

## I. INTRODUCTION

This Court should quash Uber's Comcast subpoena because Uber has not offered any information in its Opposition to meet this Circuit's good cause requirement for early discovery. In its Motion to Quash, Subscriber pointed to significant gaps in Uber's explanation of its data breach investigation and its explanation of why it believes it has "good cause" to collect sensitive personal information about Subscriber. Instead of filling in those gaps, Uber's newest disclosures show that Uber's decision to single out Subscriber is unsupported by the record and that there is no connection between Subscriber and the offending May 12, 2014 download. For example, Uber now reveals that Subscriber is ▮▮▮▮▮▮▮ of IP addresses that visited the public GitHub posts before May 12. That ▮▮▮▮ is in addition to the unknown number of Uber employees who visited the posts and anyone who may have viewed the posts through the cached copies on Google that Uber now reveals exist. Uber does not explain why it has fixated on Subscriber or why it excluded ▮▮▮▮▮ of other visitors to GitHub. More problematically, Uber does not offer any facts connecting the May 12 download to the public GitHub posts, other than an unsupported statement that it is "informed and believes" that they are, in fact, connected. All that Uber has said for certain is that Subscriber's IP address is one of many that accessed a public website ▮▮▮▮ before the offending conduct.

Uber's deficient disclosures also show that the Comcast Subpoena is not likely to reveal John Doe 1, and should be quashed on that basis. Uber does not state that this discovery will identify John Doe 1. Instead, it presents a new argument that its efforts to identify John Doe 1 "may entail a multi-step process." Not only would that exceed the boundaries of early discovery, Uber fails to explain what that "multi-step process" would entail. Uber cannot obtain Subscriber's protected identifying information on this weak record. Disclosing Subscriber's identity at this stage will have the potential of connecting Subscriber to a data breach resulting serious reputational harm. Such a result is inconsistent with the rigorous good cause standard for early discovery, particularly when there are no facts linking Subscriber to the May 12 conduct. The Comcast Subpoena should be quashed.

## II. UBER DOES NOT HAVE GOOD CAUSE TO SERVE THE COMCAST SUBPOENA

The new information disclosed by Uber does not provide good cause to enforce the Comcast Subpoena. Uber does not show that the Comcast Subpoena is likely to identify John Doe 1, it does

not explain the steps taken to identify John Doe 1, and it does not show that a suit against Subscriber can withstand a motion to dismiss.

Uber argues that the "discovery process"—though not necessarily the Comcast Subpoena—is "likely" to reveal John Doe 1 based solely on the fact that "someone used an IP address registered to Comcast to access relevant posts on the GitHub site and that Uber is informed and believes that the person who breached Uber's database accessed the GitHub posts." Opp'n, p. 4. This is not enough. Despite multiple requests in Subscriber's opening motion and during the meet-and-confer, Uber refuses to explain in any detail the basis for its "information and belief" that whoever committed the alleged May 12 download visited the public GitHub posts. Kollios Decl., ¶ 4. This is important because Uber's "information and belief" may well show that Subscriber should not be singled out for further discovery or that Subscriber is an improper target all together. There is no reason for Uber to withhold such information, and its claim that disclosure would allow the offender "to tamper with evidence or otherwise evade detection" is a red herring. Opp'n, p. 10. Uber can redact any such information so that it is only disclosed to the Court and Subscriber, as it has in its prior filings.

Even assuming Uber could explain why it is so certain that John Doe I visited the GitHub posts, Uber has not provided any facts showing that Subscriber's IP address—███████████ ███████████████—is connected to John Doe I. Uber now admits that ███████ ████████ visited the GitHub posts prior to May 12, 2014. Opp'n, p. 3. That's in addition to an unknown number of Uber employees who also had access to the GitHub posts (as well as all of the Uber employees who had access to their employer's security key through other means). Thus, even taking Uber's "information and belief" that the person who committed the May 12 download also visited the public GitHub posts at face value, Subscriber was only one of several other accesses. Uber does not explain why Subscriber is singled out here, and Uber fails to explain the steps it has taken to identify those other visitors or why it has excluded them as potential John Does. *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 579 (N.D. Cal. 1999) (to obtain early discovery, "the party should identify all previous steps taken to locate the elusive defendant.").

Uber also reveals for the first time that Google's automated indexing service visited the public GitHub posts. Opp'n, p. 3. Google's indexing "bot" downloads a copy of every page that it visits, so

1    the secret key that Uber published on GitHub was apparently also available on Google's servers. *See*
2    https://support.google.com/webmasters/answer/182072?hl=en.  Uber has not explained why it is so
3    sure that John Doe visited GitHub directly, rather than viewing the security key through Google's
4    "cached" backups.[1]

5    Uber's claim that the fact that the GitHub visit from Subscriber's address is the "most
6    contemporaneous" to the alleged May 12 download provides support for the Comcast Subpoena is
7    misleading.  First, Subscriber's IP address visited GitHub ▓▓▓▓ before the alleged data breach.
8    Uber does not explain why Subscriber's visit ▓▓▓ before the download is reason for a subpoena,
9    particularly at the exclusion of ▓▓▓▓▓▓▓▓▓▓▓▓ just days or weeks before
10   Subscriber.  Moreover, Uber admits for the first time in its Opposition that someone using
11   ▓▓▓▓▓▓▓ on the same day of the offending download.  Opp'n, p. 3.  Because
12   Uber is vague in its declaration, it is unclear whether the person using ▓▓▓▓▓▓
13   ▓▓▓▓▓▓▓▓▓▓▓▓.  If the
14   former, Subscriber's access to GitHub is not the "most contemporaneous" access to the offending
15   conduct so Uber's assertion is false.

16   The other information that Uber discloses for the first time is unconnected to Subscriber so it
17   does not help its cause.  According to Uber, the person or entity that committed the May 12 download
18   did so by using ▓▓▓▓▓▓▓▓▓▓.  Opp'n, p. 3.  Uber has not
19   offered any facts connecting Subscriber to such activity and is using the Comcast Subpoena as a
20   fishing expedition in hopes of finding such a connection.  That is why this case is distinguishable
21   from Uber's string of inapposite cases.  Opp'n, p. 6.  Those cases all concern the scenario in which
22   plaintiff has identified the IP address that committed the alleged bad act and the discovery will
23   identify the subscriber of that offending IP address.  *Voltage Pictures, LLC v. Does 1-5,000*, 818 F.
24   Supp. 2d 28, 33-34 (D.D.C. 2011) (denying motion to quash subscriber information when plaintiff
25   made showing that the targeted IP address committed the alleged copyright infringement); *Wilens v.*

---

[1] For an example showing that Google's cached pages look identical to GitHub's original posts, *see* http://webcache.googleusercontent.com/search?q=cache:JbZOT1_7hN8J:https://github.com/uber/ring pop+&cd=1&hl=en&ct=clnk&gl=us

3    REPLY IN SUPPORT OF MOTION
     TO QUASH COMCAST SUBPOENA
     Case No. C 15-00908-LB

*Automattic Inc.*, 2015 W.L. 498745 at *3-4 (N.D. Cal. Feb. 5, 2015) (court describes early subpoenas requesting identifying information about web addresses that posted defamatory statements at issue); *Quad Int'l, Inc. v. Doe*, 2012 W.L. 5868966 at *1 (N.D. Cal. Nov. 19, 2012) (permitting early discovery of identifying information of IP addresses that committed the alleged copyright infringement); *Millennium TGA, Inc. v. Does 1-21*, 2011 W.L. 2976883 at *1-2 (N.D. Cal. July 22, 2011) (same).

Here, Uber has identified the IP address that committed the alleged bad acts, and it is *not* Subscriber. Rather it is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Unlike in the cases cited by Uber, the Comcast Subpoena requests invasive, personally identifying information because Subscriber is one of several IP addresses that visited public postings on an unrelated website, GitHub, ▓▓▓▓▓▓ before the alleged wrongful act. The case law does not support such wide-reaching early discovery. *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. at 580 (plaintiff "must make some showing that an act giving rise to civil liability actually occurred and that the discovery is aimed at revealing specific identifying features of the person or entity who committed that act."); *see also Boy Racer, Inc. v. Does 1–52*, 2011 WL 7402999, at *3 (N.D. Cal. Sept. 13, 2011) ("expedited discovery may not be granted where the requested discovery clearly would not uncover the identities sought.").

Also fatal to Uber's argument is its inability (or unwillingness) to identify the "further discovery" it now suggests it will need to identify John Doe 1. Opp'n, p. 6. Does Uber intend to subpoena the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓? How many more subpoenas will be necessary? Does Uber intend to take Subscriber's deposition? Will it subpoena Google for information relating to the cached pages containing Uber's security key? Does it need to inspect Subscriber's devices? Does it intend to serve written discovery? Will it subpoena its own employees for information about the data breach? During the parties' meet-and-confer discussions, Uber refused to disclose what discovery it believes is necessary to identify John Doe 1 and it remains obstinate in its Opposition. Kollios Decl., ¶ 6. As shown in Subscriber's Motion, early discovery is not permitted when "expedited discovery is merely the first step in what could prove to be an extensive, expensive, and—equally importantly—highly intrusive discovery odyssey." *Boy Racer, Inc.*, 2011 W.L. 7402999 at *2. Uber has already served two subpoenas on GitHub through the early

discovery process, and rather than identify John Doe 1, those subpoenas have only led to more discovery. Uber's tactics are inconsistent with the extremely limited nature of early discovery in this Circuit, particularly here, where Uber has made no representation regarding when this early discovery might end. *See Hard Drive Prods., Inc. v. Does 1-90*, 2012 WL 1094653 at*2 (N.D. Cal. March 30, 2012) (denying early discovery because "the subpoena [was] only the first step in a lengthy extra-judicial investigation that may or may not lead to naming any Doe defendants in this lawsuit.");[2] *Boy Racer, Inc.*, 2011 WL 7402999, at *3.

    Uber tries to distinguish itself from the cases that deny extensive early discovery by claiming that it does not have an "improper agenda" in seeking the Comcast Subpoena. Opp'n, p. 7. But, its conduct suggests otherwise. Uber refuses to detail with any specificity the further discovery it will need to identify John Doe, it will not explain the "information and belief" it has allegedly connecting access to a public GitHub site to the offending May 12 conduct, it has disclosed facts in a piecemeal fashion to the Court only when it considers it beneficial to do so, and it would not respond to simple questions in the meet-and-confer on such topics. There is no reason to withhold all of this basic information, particularly when, as noted, any sensitive information regarding Uber's investigation would be sealed from the public. Even ignoring this deceptive conduct, courts regularly deny broad-ranging early discovery regardless of the plaintiff's motive. *See, e.g.*, *Boy Racer, Inc.*, 2011 WL 7402999, at *3.

    In short, the Comcast Subpoena seeks to significantly invade Subscriber's privacy and recognized right to proceed on the internet anonymously merely because Subscriber's IP address visited a public website ▇▇▇▇ before the offending May 12 conduct.[3] Worse still, it seeks such

---

[2] Uber mischaracterizes *Hard Drive Productions*, claiming the court denied early discovery because "plaintiff had no apparent interest in prosecuting the case." Opp'n, p. 7. But, the denial was "because plaintiff has not shown that the requested discovery [was] at all likely to uncover the identity of the Doe defendants." 2012 WL 1094653, at *4.

[3] Uber's claim that Subscriber's privacy interests to do not justify a motion to quash is unconvincing. Opp'n, p. 8. Several cases recognize the right to proceed on the internet anonymously. *See e.g., Columbia Ins. Co.*, 185 F.R.D. at 578; *SBO Pictures, Inc. v. Does 1-3036*, 2011 WL 6002620 at *2 (N.D. Cal. Nov. 30, 2011); *see also In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011). That right must be balanced when "there is a reasonable likelihood that the discovery process will lead to identifying information about the defendant." *Id.* at 580. For all the reasons explained above, the Comcast Subpoena is not so targeted.

1 invasive information while withholding facts that allegedly connect access to the public GitHub posts 2 to the May 12 download (a public post ▮▮▮▮▮, but are 3 inexplicably excluded from Uber's investigation), and withholding information regarding its 4 investigation and intent for further discovery.  Connecting an individual or a business to a significant 5 data breach, potentially resulting in significant reputational damage, based on this weak factual 6 record is not permitted.  The Comcast Subpoena must be quashed.

### III.   THE COMCAST SUBPOENA IS OVERBROAD

The Comcast Subpoena is overbroad because it seeks private, protected information when Uber has not shown any connection between Subscriber and the offending May 12, 2014 conduct. To demonstrate, Request No. 1 seeks identifying and payment information with no showing that Subscriber accessed Uber's database on its own or through ▮▮▮ on May 12, 2014.  Such overbroad discovery is not permitted.  *Chevron Corp. v. Donzinger*, 2013 W.L. 4536808 at * 11, 15 (N.D. Cal. Aug. 22, 2013) (granting motion to quash with respect to specific email accounts that plaintiff could not connect to alleged wrongdoing).  The over breadth of the subpoena shows that Uber is on a fishing expedition, not a targeted effort to identify John Doe.  For example, Request No. 5 seeks Subscriber's payment information.  There is no reason Uber needs this private information to identify John Doe 1 under any circumstances.  Rather than suggest otherwise in its Opposition, Uber confusingly states that the request is "narrowly tailored to discover information about the Comcast subscriber reasonably likely to identify the Doe defendant."  Opp'n, p. 11.  The purpose of early discovery is to identify a specific defendant that did a specific wrongdoing, not to "discover information" about a subscriber that happened to visit a public posting on GitHub ▮▮▮ before an alleged wrongful download.  The Comcast Subpoena is overbroad and should be quashed.

### IV.   CONCLUSION

For the foregoing reasons, the Comcast Subpoena should be quashed.

Dated: June 19, 2015

BOERSCH SHAPIRO LLP

*/s/ Martha Boersch*
MARTHA BOERSCH
Attorney for Subscriber