1   PERKINS COIE LLP
    JAMES G. SNELL (SBN 173070)
2   JSnell@perkinscoie.com
    JULIE E. SCHWARTZ (SBN 260624)
3   JSchwartz@perkinscoie.com
    3150 Porter Drive
4   Palo Alto, CA  94304
    Telephone:     650.838.4300
5   Facsimile:     650.838.4595

6   Attorneys for Plaintiff
    Uber Technologies, Inc.
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  Uber Technologies, Inc.,                 Case No. 3:15-cv-00908 LB

13                 Plaintiff,                 **DECLARATION OF JULIE E.**
                                              **SCHWARTZ IN SUPPORT OF PLAINTIFF**
14         v.                                 **UBER TECHNOLOGIES, INC.'S MOTION**
                                              **FOR ADMINISTRATIVE RELIEF TO**
15  John Doe I, an individual,               **REDACT PORTIONS OF THE**
                                              **TRANSCRIPT OF PROCEEDINGS FROM**
16                 Defendant.                 **THE JULY 9, 2015 HEARING BEFORE**
                                              **THE COURT**
17
                                              **[N.D. Civ. L.R. 79-5]**
18

19

20

21

22

23

24

25

26

27

28

I, Julie E. Schwartz, declare as follows:

1.      I am an attorney licensed to practice law before the courts of the State of California and this Court.  I am counsel at Perkins Coie LLP and in this action for Plaintiff Uber Technologies, Inc. ("Uber").  I make this declaration in support of Uber's Motion for Administrative Relief to Redact Portions of the Transcript of Proceedings from the July 9, 2015 Hearing Before the Court ("Transcript").  I have personal knowledge of the facts stated herein and, if called upon, could and would testify competently thereto under oath.

2.      Uber seeks to redact portions of the Transcript because the Transcript contains sensitive information regarding Uber's investigation into the identity of John Doe I.  Public disclosure of this information could possibly jeopardize Uber's ongoing investigation by giving John Doe I insight into the status of Uber's investigation and thus potentially allow him to take steps to further conceal his identity from Uber or tamper with evidence.

3.      Attached hereto as Exhibit A is a true and correct copy of the redacted version of the Transcript of Proceedings from the July 9, 2015 Hearing Before the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 20th day of July, 2015, at Palo Alto, California.


                              */s/ Julie E. Schwartz*_____
                              Julie E. Schwartz

DECLARATION OF JULIE E. SCHWARTZ
Case No. 3:15-cv-00908 LB

# EXHIBIT A

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1            UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3  Before The Honorable Laurel Beeler, Magistrate Judge

4

5  UBER TECHNOLOGIES, INC.,        )
                                   )   No. C 15-00908-LB
6          Plaintiff,              )
                                   )
7  vs.                            )
                                   )
8  DOE I,                         )
                                   )
9          Defendant.             )
                                   )

10

11                          San Francisco, California
                            Thursday, July 9, 2015

12   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
             RECORDING 9:36 - 10:15 = 39 MINUTES

13

14  APPEARANCES:

15  For Plaintiff:

16                          Gibson, Dunn & Crutcher, LLP
                            555 Mission Street
                            Suite 3000
17                          San Francisco, California
                              94105
18                     BY:  MICHAEL LI-MING WONG, ESQ.

19                          Perkins Coie, LLP
                            3150 Porter Drive
20                          Palo Alto, California  94304
                       BY:  JAMES G. SNELL, ESQ.

21

22

23

24          (APPEARANCES CONTINUED ON FOLLOWING PAGE)

25

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

2

1   <u>APPEARANCES</u>:   (Cont'd.)

2   For Defendant:
                                    Boersch Shapiro, LLP
3                                   1611 Telegraph Avenue
                                    Suite 806
4                                   Oakland, California  94612
                            BY:   MARTHA A. BOERSCH, ESQ.
5
                                    Boersch Shapiro, LLP
6                                   235 Montgomery Street
                                    Suite 835
7                                   San Francisco, California
                                      94104
8                           BY:   LARA KOLLIOS, ESQ.

9

10  Transcribed by:                 Echo Reporting, Inc.
                                    Contracted Court Reporter/
11                                  Transcriber
                                    echoreporting@yahoo.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

3

1 <u>Thursday, July 9, 2015</u>                                    <u>9:36 a.m.</u>

2                        P-R-O-C-E-E-D-I-N-G-S

3                              --oOo--

4        THE CLERK:  Calling civil action C15-0908, Uber

5 Technologies, Inc. versus Doe.

6    Counsel, please state your appearances for the record.

7        MR. BOERSCH:  Good morning, your Honor.  Martha

8 Boersch and Lara Kollios.

9        MS. KOLLIOS:  Good morning, your Honor.

10       THE COURT:  Good morning.

11       MR. SNELL:  Good morning, your Honor.  Jim Snell

12 from Perkins Coie for Uber.  And with me today, Michael

13 Wong, who represented Uber in the Antman (phonetic) case

14 that's related to this case.

15          THE COURT:  Exactly.

16       MR. SNELL:  I also have Keith Mandel (phonetic)

17 and Molly Melcher (phonetic), who are both in-house at Uber.

18          THE COURT:  All right.  Good morning.

19       MR. MANDEL:  Good morning, your Honor.

20       THE COURT:  Okay.  So I thought that you might

21 want to respond to things that subscriber said in his/her

22 reply because you -- you provided more information in the

23 opposition than you had previously.  So one, I thought that

24 was one way we could start.

25    Two, a couple of questions.  I guess the thing that

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

4

1 subscriber says that I thought we should talk about -- you

2 know, I've read all of those, not for the first time here,

3 but in other of the -- you know, the Doe cases, all of the

4 cases.

5     I guess what -- from subscriber's perspective, what it

6 boils down to, what I thought we could talk about, is, you

7 know, the -- so there's the access -- the one period of

8 time -- that's the redacted date -- before the May 12th

9 download, Uber is eliminating or identifying other Uber

10 employees who are otherwise identifying or -- I can't

11 remember the exact word that you used -- the other IP

12 addresses.

13     So this is the one left, is that right, that you

14 haven't been able to discount. Subscriber says something

15 along the lines of, well, in addition -- and I think what

16 you said is, this is the only one that accessed the posts

17 after the date that the security key was listed on the posts

18 that you haven't discounted. I guess that was my first

19 question. Is that correct?

20     So the beginning date of the subpoena is whatever the

21 date is, March. You have a time frame in your subpoena. Is

22 that the date that the security key was first put on the --

23         MR. SNELL: Yes. March. Yes.

24         THE COURT: -- post, March 11th or whatever that

25 date is. And then between March 11th and May 12th, in that

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

5

1  60-day period, this is the only IP address that you haven't

2  basically ruled out.  Is that correct?

3           MR. SNELL:  Yes, your Honor.

4           THE COURT:  Okay.  And so that's something to talk

5  about on the -- why that isn't enough from the motion to

6  quash perspective.

7      And then the other things I thought we should talk

8  about -- and I guess we'll go with Ms. Boersch first because

9  it's her motion.  Uber has said on knowledge and believe, or

10 whatever the words you used, we know -- we believe that the

11 person who did the bad deed accessed the GitHub posts.

12     And their big argument, the one that I think I would

13 like to talk about, is why is information and belief enough.

14 Why shouldn't you say more.  We asked you, and you wouldn't

15 say more.  So that's question one.

16     And then the second question is, well, depending how

17 that comes out, it's tied to the second big issue that I

18 think that they raise, which is, hey, the offending IP

19 address is the second -- you know, the one that you redacted

20 that's also -- it's identified with the May 12 download.

21     That's the bad address.  All these other cases at

22 least, the Doe cases say you've at least identified the

23 actual IP address, so if you get the identifying

24 information, you get the bad actor.  This is different.  So

25 that's another issue to talk about.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

6

1    Then the final thing is that somewhere, in somebody's

2  papers -- well, maybe there's more than that, but you said

3  that subscribers told you that there's not information

4  responsive to Items 2 through 5.  And I think that -- and

5  you said, but we're entitled to stand on our subpoena and

6  get the official response.

7    And I guess the question -- if that's true, the reality

8  is, you could -- and I'm not saying this is what should

9  happen, but if that's true, you could get a response to your

10  subpoena, except for the identifying information, which is

11  Category 1.  I know that because the identify -- and this is

12  going to the -- what the fishing expedition argument is.

13    All right.  So those are my sort of take-aways from the

14  argument.  And I guess the final thing is, I wondered why

15  payment information matters.  Okay.  So those are the issues

16  that I identified.  So Ms. Boersch, maybe you want to go

17  first, and then you could think about responding to those.

18  Or however you guys want to -- think it's best able to

19  address those issues.

20    MR. SNELL:  Your Honor, I would propose that may I

21  walk through the facts.  Because I think the facts address a

22  lot of the issues --

23    THE COURT:  Okay.

24    MR. SNELL:  -- the Court has raised.

25    I could do it on the white board here, but I think --

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

7

1          THE COURT:  That's fine.  I mean, I want -- I

2 wrote out all the facts myself.

3          MR. SNELL:  Yes.

4          THE COURT:  So I mean, I took your papers and the

5 previous orders, married everything, went through all of

6 your declarations from the beginning.  So we could go

7 through them one by one, I guess, and then raise -- talk

8 about the issues along the way.

9      I guess the primary issue that I think, if it's really

10 true that in the end, what the facts boil down to is that --

11 I mean, there's -- the subscriber is still going to say it's

12 not enough.  But if this is the only IP address, the one --

13 the period of time between March and May, it's the only

14 address that you haven't sort of ruled out, they were going

15 to argue that that's not enough, but that's fine.  Let's

16 just take that as a starting hypothesis.

17      If it's true that that's the only one, that's a pretty

18 important fact.  Okay.

19          MR. SNELL:  Okay.  And I think I could -- by going

20 through the facts, I can also talk --

21          THE COURT:  Okay.  That's fine.

22          MR. SNELL:  -- about that, your Honor.  But --

23          THE COURT:  And then the question is -- if that's

24 true, then the main argument is, why is it enough for you to

25 say informed and believed that the bad actor on May 12th

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

8

1 visited the GitHub post. Because that's the thing that

2 connects the May 12th download to the earlier --

3          MR. SNELL: Yes.

4          THE COURT: -- Comcast subscriber access.

5          MR. SNELL: Right.

6          THE COURT: And is information and belief because

7 we can't figure out any other way it could have happened,

8 and we know that it was there, or is it something more

9 granular than that, and are you required to tell me to get

10 around the fishing expedition argument that subscriber

11 makes?

12          MR. SNELL: Right.

13          THE COURT: That, I think, is the key thing.

14          MR. SNELL: Okay. It's a little bit of both.

15          THE COURT: Okay.

16          MR. SNELL: You know, it's a secret key.

17          THE COURT: Right.

18          MR. SNELL: It's not a key that's published. Uber

19 employees know it's supposed to be secret. It was

20 inadvertently published at a GitHub website. And so there's

21 a reasonable --

22          THE COURT: So that's the basis for your

23 conclusion. The only reasonable inference is that's how the

24 bad person got it.

25          MR. SNELL: That's correct, your Honor. But given

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

9

1    Uber's ongoing investigation, there's been some additional

2    things --

3              THE COURT:  Okay.

4              MR. SNELL:  -- that have been learned that I think

5    are relevant to the inquiry.

6              THE COURT:  Okay.

7              MR. SNELL:  And I'd like to remind the Court about

8    the standard.  The Ninth Circuit in the <u>Gillespie</u> case said,

9    unless it's clear that discovery would not uncover the

10   identities, right, good cause should exist.  We're not

11   talking about a criminal reasonable doubt standard.

12             THE COURT:  I know.

13             MR. SNELL:  We're not talking about a civil

14   preponderance of the evidence.  It's is there good cause.

15   Is it reasonably likely we can identify --

16             THE COURT:  Reasonable likelihood.

17             MR. SNELL:  -- yeah -- the Defendant.

18        And so, you know, if you just -- so there's this

19   Comcast IP, right?  And you're right, on -- ████████████

20   it accesses the GitHub website.  And on the GitHub website,

21   there's an Uber secret key.

22        And the GitHub website where this is happening is for

23   Uber employees, engineers who work together on code.  And

24   there were only two, maybe three engineers that we've

25   identified who would have been -- their IP addresses are

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

10

```
1  associated with hitting the site.
2       On the day this was posted, there were ████████
3  ████████ that we haven't been able to identify.
4            THE COURT:  On the day it was posted?
5            MR. SNELL:  On the day it was posted, which was in
6  March --
7            THE COURT:  Right.
8            MR. SNELL:  -- he said.
9       We don't think those are as interesting as the Comcast
10 IP address because those are typically associated with bots,
11 automated crawlers, because they're looking for new links,
12 and they go out and they say, oh, there's a new link, let's
13 go look at it.  And we think that's what those are.  We
14 continue to investigate, but that's -- that's what we think.
15           THE COURT:  So on the posting date of March, there
16 are ████████ is what you said?
17           MR. SNELL:  Yes.  Yes.
18           THE COURT:  Okay.  That's not on the record.
19 You're just telling me that.
20           MR. SNELL:  Yeah.  There's ████████████
21 ████████████████████ We don't think that
22 individual is as interesting as Comcast's IP address.
23           THE COURT:  Okay.
24           MR. SNELL:  Because they're using an automated --
25           THE COURT:  So it's a bot as well?
```

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

11

1        MR. SNELL: It's a bot. It's a bot.

2        THE COURT: Okay. Okay.

3        MR. SNELL: ████████████████████████

4   ████████████████████████████████████████

5   ██████████████████

6        THE COURT: Okay.

7        MR. SNELL: And subscriber suggests that, well,

8   Google must have cashed those. The IP address must be out

9   there. Your Honor, in our investigation, we looked at the

10  Google caches. We went to Archive.org. We looked there.

11  Archive.org, when you search the pages, it says for some of

12  them, these pages can't be accessed due to Robots.cast

13  (phonetic).

14     And so we have not been able to find any evidence that

15  this key was posted somewhere other than --

16        THE COURT: Okay.

17        MR. SNELL: -- the GitHub website. And neither

18  has subscriber because they would have put it in their

19  papers.

20        THE COURT: I understand.

21        MR. SNELL: So what you have, then, in May, you

22  have this ██████████ IP address. █████████████████████

23  ████████████████████████████████████     ████████████

24  ████████████████████████

25     Now, we could -- ███████████████     ████████████████

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

12

1  subpoena them, ███████████████████████████████████

2  ████████████████████████

3          THE COURT:  Okay.

4          MR. SNELL:  So whoever did this did a very

5  sophisticated attack, trying to cover their tracks by using

6  ████████████████████████████████████████████

7  ███████████████████████████████  So --

8          THE COURT:  And I know it's not -- I don't think

9  it's specifically in the record.  You just said at the

10 beginning that you had two to three Google engineers who are

11 working on the GitHub.

12         MR. SNELL:  Right.  Two to three Uber.

13         THE COURT:  Uber.  Sorry.  What did I say?

14         MR. SNELL:  Google.

15         THE COURT:  Google.  Sorry.  That was the Google

16 cache that was on my right.  So two to three engineers.  I

17 mean, is that the extent of the activity is the standard

18 with GitHub sites in the period between March and May 12th?

19         MR. SNELL:  It was -- engineers hit the site

20 several times.

21         THE COURT:  Okay.

22         MR. SNELL:  But yeah, it's them working.

23         THE COURT:  So there's not a lot of hitting the

24 site, is what you're telling me.

25         MR. SNELL:  Right.  And what we've tried to do is,

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

13

1   you know, look at the IP -- look at the IP addresses rather

2   than the hits, so I could tell you that --

3                THE COURT:  Right.

4                MR. SNELL:  -- one engineer was on there 15 times.

5   It's not going to be helpful.

6                THE COURT:  Exactly.  I understand.  Okay.  That's

7   fine.  That's --

8                MR. SNELL:  So on May 12th, we know that this

9   person downloaded from the Uber database, and they used the

10  secret key.  And they downloaded driver data.

11      We also found out -- this is something we've put in our

12  opposition papers.  We learned it recently, that this same

13  ████████████ IP address was ████████████████████████

14  ████████████████████████████ --

15               THE COURT:  Okay.

16  MR. SNELL:  -- ████████████████████ ████████████████

17  ██████████████████████████████ ████████

18  ██████████████████████████

19               THE COURT:  All right.  So a half an hour before?

20               MR. SNELL:  Yes.  It started about a half an hour

21  before, and almost a simultaneous switch.  I think there's a

22  10-minute difference between --

23               THE COURT:  Got it.  Great.

24               MR. SNELL:  -- going from Uber to --

25               THE COURT:  So the inference is -- I mean, their

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

14

1    argument is of course there's your bad actor.

2                    MR. SNELL:  Yes.

3                    THE COURT:  The issue is whether they're linked to

4    the ████████ -- which I'm conspicuously trying not to say

5    out loud perhaps unnecessarily -- that the issue is what's

6    the link to that person.  Is it enough.  And you say, well,

7    everybody else is essentially a Google software engineer,

8    except for that person or things that reasonably are -- can

9    be considered boxed at the beginning.  And that's not

10   consequential because that's what happens when you put new

11   sites up.

12                   You also said that the reasonable -- maybe the

13   only inference, given your internal investigation, is that

14   the person who got the key got it from GitHub.  And you

15   described that the ████████████████████████████████████

16   ████████████████████████████

17                   MR. SNELL:  And looked at Uber.

18                   THE COURT:  Right.

19                   MR. SNELL:  Looked at Uber data on the post.

20                   THE COURT:  Right.

21                   MR. SNELL:  And we don't think -- well, yeah.  So

22   there's a couple more facts that --

23                   THE COURT:  Okay.

24                   MR. SNELL:  -- Uber has learned from its internal

25   investigation.  And one is that this Comcast IP is

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

15

1  associated with somebody who had been scraping driver data

2  from the Uber website.

3          THE COURT:  So -- okay.  That's a big thing.

4          MR. SNELL:  Yeah.

5          THE COURT:  So say that again.  And say --

6          MR. SNELL:  This Comcast IP address is associated

7  with somebody who had been scraping driver data from the

8  Uber website.

9          THE COURT:  And what's the basis for that

10 conclusion?  It's not actually in the record, right?

11         MR. SNELL:  It's not in the record.

12         THE COURT:  Okay.

13         MR. SNELL:  It's Uber's internal investigation.

14         THE COURT:  Okay.

15         MR. SNELL:  And also that -- this Comcast IP

16 address.

17         THE COURT:  Okay.  Sorry.  So I just want to -- I

18 mean, I understand what that means, of course.  What's the

19 time period for that connection to the IP address scraping

20 Uber drive data?

21         MR. SNELL:  I'm not sure of the exact time period,

22 your Honor.  It's before --

23         THE COURT:  May 12th?

24         MR. SNELL:  It's before May 12th, yes.

25         THE COURT:  Okay.  Is it in -- ended in 2014?

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

16

1 Same time period?

2         MR. SNELL: Same time period.

3         THE COURT: So basically, that's a big additional

4 piece of information.

5         MR. SNELL: Yes.

6         THE COURT: Okay.

7         MR. SNELL: And also that this Comcast IP

8 address --

9         THE COURT: The question is whether you should

10 submit a short supplemental declaration saying that.

11         MR. SNELL: Well, your Honor, we think we've done

12 enough with the initial papers.

13         THE COURT: Right.

14         MR. SNELL: You already ordered that we had done

15 enough.

16         THE COURT: Yeah.

17         MR. SNELL: We think we've done enough with the

18 opposition. We'd submit supplemental --

19         THE COURT: The only slight thing I thought, which

20 is what I wanted to discuss and why I need to go back and

21 read Sivileti (phonetic) again is really the only thing -- I

22 mean, not that I'm not looking forward to hearing the

23 arguments on the other side, but the main arguments seem to

24 me, you've got a Comcast IP ███████, you've got the

25 ███████IP in May. Is it enough that you said on

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

17

1 information and belief that the person accessed?  Is it

2 enough for you to be more vague, and should you be more

3 specific?

4     Because other than that, it's just, you know, how do

5 you know it's not somebody from Uber who ███████████

6 ███████████ and took all the information?  I mean, that's

7 kind of the inference from the argument.

8     And so that argument disappears completely, I think,

9 when you say that you've got -- your investigation also

10 reveals that this Comcast address during the same time

11 period was -- so it just makes my job easier.  Not that

12 it -- not that the outcome isn't the same anyway.  Maybe it

13 is.  Maybe -- it probably is.

14         MR. SNELL:  The hard drive case we cited says,

15 when you look at an IP address, date and time is sort of

16 what you need to prove --

17         THE COURT:  Right, right.

18         MR. SNELL:  -- for your investigation prior.

19         THE COURT:  Right.

20         MR. SNELL:  So we think there's enough, and we

21 think that the information we're looking for is focused and

22 very targeted, right?  We're looking for who this is.

23         THE COURT:  Right.

24         MR. SNELL:  And I think it matters who that is.

25 If this is a competitor of Uber's --

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

18

1          THE COURT:  I see.  I see.

2          MR. SNELL:  -- it would matter.

3          THE COURT:  I see.

4          MR. SNELL:  We're looking for connections between

5   the ████████IP address and --

6          THE COURT:  I see.  I see.

7          MR. SNELL:  -- the Comcast IP address.  That's

8   Requests 2 and 3.  And --

9          THE COURT:  Why does payment information matter?

10         MR. SNELL:  Well, it's a way to confirm, you know.

11  If somebody has put in --

12         THE COURT:  I see --

13         MR. SNELL:  -- a funky name as a subscriber and

14  you have the bank account information --

15         THE COURT:  I see.

16         MR. SNELL:  -- you can confirm.

17         THE COURT:  I see.  Okay.  All right.  That's

18  enough for --

19         MR. SNELL:  And I have not spoken to Comcast at

20  all about the category, since there's a motion to quash.

21  You know, I want to be -- I want to have the Court's

22  blessing and meet and confer with them.  I don't know

23  whether or not they have Categories 2 through 5.  So I would

24  like to go talk to them about all five categories.

25         THE COURT:  Okay.  All right.  Thank you.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

19

1    Ms. Boersch.

2         MR. BOERSCH:  Your Honor, I just want to point out

3    what the Court has already noted, which is none of this is

4    in the record.  And none of these opposing facts that Mr.

5    Snell is reciting are in the record.  None of that was

6    presented to the Court at the outset of this case, when they

7    knew it, when they could have presented it to the Court.

8         And we think that Uber has been on a witch hunt and a

9    fishing expedition directed at subscriber and has done that

10   by concealing from the Court or not revealing to the Court

11   information as it has gone along.  And today is just an

12   example of that.  They now say they have some information

13   that the Comcast ID is associated with someone who has been

14   scraping data.  I don't know what they mean by that.  I

15   don't know what that information is.  That absolutely has to

16   be in the record.

17        And I think the problem with Uber's motion, aside from

18   what we believe are misleading facts and an effort to

19   conceal some facts that are critical and would be critical

20   in favor of subscriber, is that Uber minimizes the legal

21   standard that they have to meet in order to get the

22   subpoena.

23        And it is not, as Mr. Snell suggests, that they just

24   have to show that, well, you know, there would be a link in

25   a chain of evidence that someday we might be able to

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

20

1  identify.  They have filed what is an incredibly bare bones

2  complaint at the point that I think would not survive under

3  Iqbal, under a motion to dismiss.

4      There are no facts in that complaint, no facts -- none

5  of the facts that Mr. Snell has recited today, none of the

6  facts that he put in his prior pleadings.  So there's

7  nothing in the complaint that tells us anything.  There's

8  nothing in the papers that they filed previously that

9  establishes, again, any connection between subscriber and

10  the May 12th download.  The information he puts forth today,

11  as I said, is not in the record and is, again, very, very

12  vague.

13      The standard they have to meet, as Judge Jensen said in

14  Columbia Insurance, is more akin to a probable cause

15  standard.  Uber is trying to convert the standard into

16  something much, much, much lower.  And were this regular

17  discovery after the case had been filed and there had been a

18  Rule 26 conference, sure, they could get this discovery.

19  But this is early discovery, and they're doing this in an

20  effort -- and they've already dragged subscriber into a

21  litigation, and they're seeking subscriber's personal,

22  sensitive information based on a completely deficient

23  factual showing to the Court.

24      So it's -- we believe strongly that certainly the

25  identity of -- there's no basis, no basis to order anyone,

*Echo Reporting, Inc.*

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

21

1    Comcast, to disclose the identity of the subscriber.  Only

2    if they can connect the subscriber to the May 12th download,

3    connect it to evidence put in the record that clearly

4    establishes a connection as opposed to inferences or

5    hunches, only if they can do that would they ever be

6    entitled to the identity.  And they haven't provided that to

7    the Court, and I don't think they can.

8        Much of what Mr. Snell told the Court just now is again

9    based on inferences and hunches.  Mr. Snell has told the

10   Court, well, there were three or four Uber engineers who

11   accessed the site, but we don't think -- we're not

12   interested in that.

13       They may not be interested in them because they're on a

14   witch hunt for subscriber, but those individuals could just

15   as likely have been the ones who did the May 12th download,

16   and yet there's been no showing that Uber took any steps to

17   try to determine that, no showing that Uber took any steps,

18   which they're required to make to show to the Court, that

19   they took any steps to actually identify the May 12th --

20           THE COURT:  So -- but here's the thing.  It's the

21   data that actually was taken, driver data, is relevant to

22   Uber's discounting of people like it's software engineers

23   and its bots, right?  So if you think of it as the

24   equivalent of -- so one of the arguments you made is, hey,

25   Comcast subscriber on █████████ is not the only guy,

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

22

1  person.  There is also, you know, Uber engineers.  It could

2  be Uber people and whoever else.  I think there were three

3  categories that you put it in your reply.

4      But when you look at what the data is, driver data,

5  identifying information, that has utility only in certain

6  contexts, which supports the inference that it's not that

7  engineers have took it.  It might -- you know, it's other

8  sort of white trade secret information that might be useful

9  to your leaving the company maybe, or it's relevant to a

10  competitor maybe.

11      It's not the sort of thing that one could reasonably

12  infer that the software engineers aren't the kind of people

13  interested in that data.  Therefore, narrowing it to the one

14  person in ▇▇▇▇ Uber can't sort of identify by category is a

15  reasonable conclusion from the investigation.

16          MR. BOERSCH:  So I do disagree with that.  And

17  that's because, I mean, it's very common, in fact, typical

18  in these cases that the people who do these illegal

19  downloads are, in fact, employees who are thinking of

20  leaving the company and they want to get the data.

21      So I don't think the fact that it's driver information

22  at all could lead to --

23          THE COURT:  But a software engineer is not really

24  that kind of person.  The software engineer is the person

25  who writes the code to trap the information to do that.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

23

1          MR. BOERSCH:  Sure.

2          THE COURT:  And those are the people who accessed

3    the GitHub sites --

4          MR. BOERSCH:  Sure.

5          THE COURT:  -- not other Uber employees.

6          MR. BOERSCH:  Sure.  But any employee, whether

7    it's a secretary, whether it's a software engineer, no

8    matter who it is who's leaving the company will be looking

9    for whatever information they currently have access to in

10   order to pass it on to their next employer potentially.  So

11   that's number one.

12       Number two, Mr. Snell is --

13          THE COURT:  So they would be more interested in

14   taking the code than the data.

15          MR. BOERSCH:  That's an inference, your Honor.

16   What we don't have --

17          THE COURT:  Right.  The issue is whether -- okay.

18   I understand.

19          MR. BOERSCH:  What we don't have in the record

20   here is any information, any facts to show that that

21   inference is supportable, that Uber has done anything to

22   determine whether or not those engineers may -- are they

23   even with the company, have they left the company, have they

24   gone to a competitor.  On this showing, they're just not

25   entitled to the subpoena.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

24

1    The other thing I want to point out is, what Mr. Snell

2    omitted in his presentations to the Court today was what

3    they revealed only belatedly, which was that in addition to

4    the engineers and the Googlebox, there was a ███████

5    undefined, of ███████████████. No explanation what those

6    other -- that ███████ of other -- those are separate and

7    different --

8         THE COURT:  Right.  A ███████  The key facts --

9    and again, we'll make sure that this is precisely true.  The

10   key fact, ███████of one is the other -- the bot website or

11   ███████████  But this is the only one after the code -- or

12   the security key was posted.  I mean, is that correct?  This

13   is the only one after the security code was posted to the

14   GitHub posts.

15        MR. SNELL:  That's correct, your Honor.

16        THE COURT:  Okay.

17        MR. SNELL:  There was a Google bot and some uber

18   engineers, but that's the only unidentified --

19        THE COURT:  The only one.  And so that's what

20   makes it different.  You know, when you look at the ███████

21   this is the only one.  Okay.

22        MR. BOERSCH:  Your Honor, I think that's

23   inconsistent with the declaration that Mr. Snell filed with

24   the court, which is Docket Number 34.  It says, "Uber has --

25   continuing investigation, but there are a ███████ of IP

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

25

1 addresses that visited GitHub web pages prior to the May

2 12th download and by definition after the March 11th

3 posting."

4         THE COURT:  So wouldn't it just be -- so there's

5 several declarations because it's all the way -- they all --

6 they start all the way with ECF 4-2.  There's -- Uber

7 reviewed IP addresses that accessed Uber's internal website

8 and isolated one unrecognized IP address.  That's the Garbot

9 (phonetic) declaration, ECF Number 4-2, paragraph two.

10        There's the -- and then on ████████, Comcast's IP

11 accessed it.  It's one of only a ██████ of IP addresses

12 that visited the GitHub site before the May 12th download

13 that Uber hasn't identified as either associated with Uber

14 users or otherwise explained.  That's Mr. Snell's

15 declaration.

16        Subscriber's IP address is the only IP address not

17 identified by Uber that accessed the post after the date it

18 was posted.  We could look to see exactly what the

19 declaration says.

20        MR. BOERSCH:  And your Honor --

21        THE COURT:  But I was actually pretty careful when

22 I wrote that.  Like I literally had the declarations and was

23 typing the information into the facts from the declarations.

24 So that is at ECL Number 35-6, paragraph one.  Let me just

25 look at that.  Or paragraph two maybe.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

26

1          MR. BOERSCH:  It's paragraph two.

2          THE COURT:  Only a ████████ of IP addresses have

3   visited prior to the May 12th download.  It is not

4   identified, i.e. automated, indexed by Google.  So that is

5   in the record.  Okay.  That's what that means.

6          "Subscriber's ID visited the GitHub web page on ████

7   ████ and is the only IP address identified by Uber that

8   accessed the post after the date it was posted."  And so

9   what that -- what I draw from that -- it's not, you know --

10  again, let's be precise and make sure it's saying what I

11  think it says.  But I put those -- access the post after the

12  date it was posted.  And that's a quote.

13         And by the post, you mean the GitHub post that had the

14  security key?

15         MR. SNELL:  Yes.

16         THE COURT:  Okay.  So that was a pretty important

17  granular reading of the declaration and why you say the

18  information in your declaration is enough.  This is the only

19  one.

20         MR. BOERSCH:  And I asked for clarification of

21  that because I don't think that's what that says.  The

22  declaration says there's three categories of accesses.  One

23  is a ██████ of IP addresses that visited the GitHub web

24  pages prior to May 12th.  The second are Uber engineers or

25  Uber employees.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

27

1            THE COURT:  Right.

2            MR. BOERSCH:  It inserted a Google bot.

3            THE COURT:  Exactly.  No.  I literally went about

4    one, two three, like that, and I was --

5            MR. BOERSCH:  Right.  So what we have no

6    explanation of here is what is this other ██████   And it's

7    not clear from this declaration that the subscriber --

8            THE COURT:  You're suggesting -- which is why I

9    said that's why I wanted to have that precise conversation.

10   You're suggesting it's vague or even suggesting it's maybe

11   purposefully vague, and it's not capable of what I'm saying

12   it means.  And that's why I wanted to say specifically, does

13   that mean that this is the only -- when you say this is the

14   only IP address not identified by Uber that accessed the

15   post after the date it was posted --

16           MR. SNELL:  That's correct, your Honor.

17           THE COURT:  Okay.  So that's -- he's saying that's

18   correct.

19           MR. BOERSCH:  Well, what does not identified mean?

20   That they've identified an IP address or that they know who

21   it is?  I don't --

22           THE COURT:  Well, everybody else is Google

23   engineers or reasonably, you know, automated indexing by

24   Google.

25           MR. BOERSCH:  And another ██████ of IP addresses.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

28

1      THE COURT:  Well, that's not -- when you actually

2  look at those, that's not --

3      MR. BOERSCH:  Perhaps --

4      THE COURT:  Because the ███████ comes first.  Is

5  there a ███████ -- that there are only a ███████ of websites

6  that visited before May 12th download that was not

7  identified or otherwise recognizable.

8      MR. BOERSCH:  In other words, potential May 12th

9  offenders.

10      THE COURT:  Exactly.  But then followed by that

11  one -- okay.  So you're saying that's a disconnect.  That

12  doesn't make sense.  Why would you say there's a ███████ --

13  one -- this is the only one after the date it was posted,

14  meaning the security queue was posted on the GitHub page --

15  posts, pages.

16      MR. BOERSCH:  Exactly.

17      THE COURT:  Okay.  But you're saying it's the only

18  one.

19      MR. SNELL:  Yeah.  We're not trying to be

20  purposefully vague.  We're trying to be clear.  And we're

21  dealing with different IP addresses and different touches,

22  and there are three buckets, unidentified ██████ and ones we

23  can identify.  And the unidentified █████ were all on the

24  date of the post.  And other than that, it's Uber --

25      THE COURT:  Other than that, it's all the date of

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

29

1   the post, giving rise to the inference that they're

2   crawlers, bots. ███████████████████████████   So

3   they're all on the date of the post or engineers or Comcast

4   subscriber.

5           MR. BOERSCH:  No.  I think that's --

6           MR. SNELL:  Or the Google bot.

7           THE COURT:  Or the Google bot.

8           MR. BOERSCH:  The Google bot.

9           THE COURT:  Right.

10          MR. BOERSCH:  So -- but the problem, your Honor,

11  is number -- as I said, none of this is in the record.

12  Number two, again, this is very vague.  And I think in order

13  to get subscriber's identity, which is personal and

14  sensitive to subscriber, they have to do more than just say,

15  we -- there's a ████████  and we just -- we're not interested

16  in them.  They're not interested in them because it's a

17  fishing expedition.

18      On the record that's presently before the Court,

19  they're not entitled to get the subpoena.  Certainly not

20  subscriber's identity.  Because again, they haven't --

21  number one, they haven't told the Court what steps they took

22  to identify -- they could easily identify that May 12th IP

23  address.  They can subpoena ████████  They can get the

24  information from ████████  They say --

25          THE COURT:  Well, ████████ says that it doesn't

*Echo Reporting, Inc.*

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

30

1  keep it on its website.

2          MR. BOERSCH:  Well, he says that.  Again, none of

3  this is in the record.  And we have --

4          THE COURT:  Well, I suppose that that's something

5  I could take judicial notice of.

6          MR. BOERSCH:  I -- we would object to that.

7          THE COURT:  Well, I suppose you could say for the

8  fact that it was said, not for the truth of it.  But yeah.

9          MR. BOERSCH:  But at any rate, they've never made

10 any effort to try to determine who actually was behind the

11 May 12th incident.  And instead, they're focused on

12 subscriber.  And I think they're focused on subscriber in a

13 way that is not justified by the evidence that they've

14 presented -- certainly by the evidence that they presented

15 to this Court today.

16         THE COURT:  Okay.

17         MR. BOERSCH:  The other -- the other point we

18 wanted to make, again, is the overbreadth of the subpoena.

19 The information that they're seeking is way more than they

20 would be entitled to, even if they had made a -- showing

21 particularly the payment information.  There's absolutely no

22 reason why they would need the payment information at this

23 point.  That is very private and personal information.

24         THE COURT:  Right.  I mean, while the idea of

25 getting the payment information is -- I understand.  Why is

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

31

1 it enough if it's calculated to lead to the identity of the

2 person --

3          MR. BOERSCH:  That's not the standard that

4 applies, your Honor.  And I even think if you look at the

5 case law carefully, Mr. Snell keeps saying that the case law

6 says that it's a reasonably likelihood.

7          THE COURT:  I'll go back.  I'll need some validity

8 again.

9          MR. BOERSCH:  The cases are actually not that

10 clear.  Many cases say that it has to be very likely, and

11 many cases say that you actually have to show that you're

12 going to.

13          THE COURT:  I haven't re-read all the cases, but

14 I'll go back and look at them.  I mean, my recollection is

15 that that Ninth Circuit case said it was the discretion that

16 didn't allow the discovery.  That's what you said in your

17 opposition.  I don't literally have all the cases.  I'll

18 look at them and remind myself of the precise credit or

19 standard, but I think that the standard is reasonable

20 likelihood, along the lines of what you described in your

21 opposition.  But I'll obviously be very careful that every

22 case that I cite is something that I say is accurately

23 affecting law.

24     Okay.  So -- all right.  So let's go back to one

25 last -- let me just make sure I didn't have any other

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

32

1 questions. One, from Uber's perspective, you didn't say

2 anything -- I don't think you said what -- I just wrote this

3 down seconds before I came into the courtroom. Do you --

4 you don't oppose subscriber's request to at least proceed as

5 subscriber for now? I mean, it doesn't affect your

6 subpoena. You didn't say anything about it in your

7 opposition. I don't think you did.

8            MR. SNELL: I guess the question is, what does

9 "for now" mean. I thought it meant for purposes of the

10 motion and --

11           THE COURT: Exactly.

12           MR. SNELL: -- this proceeding.

13           THE COURT: Exactly. Yes.

14           MR. SNELL: Yes, I'm fine with that.

15           THE COURT: Okay. That's fine.

16           MR. SNELL: Certainly if we're able to get the

17 information from Comcast, we should be able to use it.

18           THE COURT: All right. So -- and I guess the

19 final thing I want to ask you is, you know, having

20 thought -- and I just want you to say it again because I

21 started to write it down. And not necessarily -- it's not

22 in the record, but I still wanted to be precise about it. I

23 wrote it down.

24      You said to me the Comcast IP address is associated

25 with someone who -- and I wrote down my quote, and then I

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

33

1  didn't put in what you said.  So just say it again for me so

2  I capture it.

3            MR. SNELL:  Someone who had scraped --

4            THE COURT:  Who scraped.  That was the word.

5            MR. SNELL:  Yeah.

6            THE COURT:  Scraped --

7            MR. SNELL:  Driver data --

8            THE COURT:  -- Uber's --

9            MR. SNELL:  -- from the Uber website.

10           THE COURT:  -- driver data during this time

11 period.

12           MR. BOERSCH:  Your Honor, on that, again, I don't

13 know what Mr. Snell means by "is associated with."  It

14 either is or isn't the IP address that did that.  I don't

15 know what "is associated with" means.

16           THE COURT:  Well, I suppose -- so the question

17 is -- I mean, you're saying I don't need it.  If -- you may

18 be right.  If I did say I needed it, you'd be able to fix it

19 and provide it then.  So it's not -- there's no harm, I

20 suppose, if I end up not agreeing with that after

21 thinking -- writing out the standard.  I literally just have

22 not written out the standard again.  I didn't just want to

23 plug and play from the last time I wrote out the standard in

24 the Dell order.  I wanted to go back and read the cases.

25      But do you have any revised perspective about whether

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

34

1 you want to submit an additional declaration today with some

2 of the stuff you said from a software engineer, for example?

3 Or if you don't want to, you can always let me do my order,

4 and then I can decide if I need it.  And if I do, then I can

5 tell you to do it.

6          MR. SNELL:  Yeah.

7          THE COURT:  So it's up to you.  It's a little

8 faster for me to maybe --

9          MR. SNELL:  I think we wouldn't want to do a

10 revised order if it's not necessary.  And I think, you two,

11 two of the themes from the subscriber contradict each other.

12 One is, we haven't turned over every stone.  We haven't

13 looked at every single thing.

14          THE COURT:  And I don't think you need to.  That's

15 fine.

16          MR. SNELL:  And the other is, your Honor's

17 discovery which -- who knows what it will land.  And so we

18 think we're like Goldilocks.  We're right in the middle.

19 We've done a reasonable, targeted, focused discovery on the

20 places we think are necessary.

21     So I guess the answer is, your Honor, if you want us to

22 do that declaration, we would do it.  We would prefer not to

23 because we think we've satisfied the standard.

24          THE COURT:  Okay.  That's fine.  I'll let you know

25 if I want you to do it.  That's fine.  Okay.  Thank you.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

35

1    Anything else?

2         MR. BOERSCH:  Your Honor, if the Court is inclined

3   to grant the issuance of the subpoena in all respects, we'd

4   ask for the Court to stay it so we can appeal.

5         THE COURT:  Okay.  You're always welcome to

6   appeal, right?  And I don't know that I have to stay it for

7   you to --

8         MR. BOERSCH:  Well, you would have to stay it

9   because then the harm would be --

10        THE COURT:  Right.  I suppose you'd file a notice

11  of appeal, and then that takes care of it.  But -- okay.  So

12  let me -- the only reason I'm just looking at you is, you

13  know, if you're right and I don't need it, then I suppose

14  Comcast can preserve its information.  Do you think it's

15  worth having an appeal if a declaration from a software

16  engineer potentially makes it more bulletproof?

17    But I'm not going to tell you to do it because you

18  might be right, and I sort of tend to agree.  But you know

19  how it is.  Sometimes a clear record, a motion saves from

20  hearing appeal.  So it's --

21        MR. SNELL:  I hear you, your Honor.  I think we'll

22  confer with the client and --

23        THE COURT:  You ought to confer with the client.

24  If you plan to submit anything and it's not -- I'm going to

25  go back and, you know, in the sort of midst of writing.  So

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

36

1  I'll do that anyway.  You just said that you're going to

2  submit a declaration.  Maybe you can decide whether you're

3  going to do it today.  You don't have to submit it today,

4  but you could let me know today.

5      And that way, I will stop at some point, and I'll file

6  whatever it is that -- I'll finish writing all the -- go

7  through my legal standard stuff.  It's no big deal to me to

8  wait a couple of days to get a declaration.  Or if you

9  decide that you don't want to, just submit a statement today

10 saying you're going to stand on the record that you have.

11 Okay.

12          MR. SNELL:  Okay.  Thank you, your Honor.

13          THE COURT:  And whatever -- and if you -- so if

14 you do want to submit a declaration, then just let me know

15 that you're going to do that and roughly when you're going

16 to do that.  And take whatever time you think is reasonable.

17 Okay.

18          MR. SNELL:  Okay.  Great.  Thank you, your Honor.

19          MR. BOERSCH:  Thank you, your Honor.

20          THE COURT:  Thank you.

21      (Proceedings adjourned at 10:15 a.m.)

22

23

24

25

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

37

1                    CERTIFICATE OF TRANSCRIBER

2

3        I certify that the foregoing is a true and correct

4   transcript, to the best of my ability, of the above pages of

5   the official electronic sound recording provided to me by

6   the U.S. District Court, Northern District of California, of

7   the proceedings taken on the date and time previously stated

8   in the above matter.

9        I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15

16            Echo Reporting, Inc., Transcriber

17                 Friday, July 10, 2015

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*