1  BOERSCH SHAPIRO LLP
   David W. Shapiro (State Bar No. 219265)
2  Dshapiro@boerschshapiro.com
   Martha Boersch (State Bar No. 126569)
3  Mboersch@boerschshapiro.com
   Lara Kollios (State Bar No. 235395)
4  Lkollios@boerschshapiro.com
   1611 Telegraph Ave., Ste. 806
5  Oakland, CA 94612
   Telephone: (415) 500-6640
6

7  Attorneys for Defendant
   Subscriber
8

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                SAN FRANCISCO DIVISION

12

13  UBER TECHNOLOGIES, INC.            Case No. 3:15-cv-00908 LB

14       Plaintiff,                    **SUBSCRIBER'S NOTICE OF MOTION
                                       AND MOTION FOR STAY PENDING
15       v.                            APPEAL**

16  JOHN DOE I,                        **REDACTED VERSION OF DOCUMENT
                                       SOUGHT TO BE SEALED**
17       Defendant.
                                       Date: September 10, 2015
18                                     Time: 9:30 am

## NOTICE OF MOTION AND MOTION FOR STAY PENDING APPEAL

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 10, 2015, at 9:30am, before the Honorable Magistrate Judge Laurel Beeler of the United States District Court for the Northern District of California, Subscriber will and hereby does move the Court, pursuant to Rule 62 of the Federal Rules of Civil Procedure, to stay the Court's July 20, 2015 Order Denying Subscriber's Motion to Quash pending Subscriber's appeal to the Ninth Circuit. The grounds for this motion, as set forth in more detail below, are that Subscriber will be irreparably harmed absent a stay, a stay will not substantially injure Uber, Subscriber's appeal is likely to succeed on the merits, there is no cognizable public interest in knowing Subscriber's identifying information unless and until Uber has sufficient information under Federal Rule of Civil Procedure 11 to name Subscriber as a defendant, and there is a significant public interest in protecting the rights of citizens to internet privacy.

## RELIEF REQUESTED

Subscriber seeks the following relief: To stay the Court's July 20, 2015 Order Denying Subscriber's Motion to Quash pending Subscriber's appeal to the Ninth Circuit.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On July 20, 2015, the Court issued an Order Denying Subscriber's Motion to Quash and allowing Subscriber to proceed in this action as "Subscriber" ("Order"). Subscriber now moves to stay the Order pending appeal because Subscriber's appeal is likely to succeed on the merits, a stay will not injure Uber, and absent a stay, Subscriber will suffer an invasion of privacy and irreparable reputational harm.

In denying Subscriber's motion, the Court relied on a relaxed standard for early civil discovery, treating it like the "reasonable suspicion" standard that allows the government to seek grand jury subpoenas. Using this more forgiving standard and at Uber's urging, the Court relied not on facts, but on inference and presumption, to connect Subscriber to the allegedly unlawful May 12 download. Eliminating these inferences leaves the Court with just one fact about Subscriber: that Subscriber lawfully accessed a public GitHub webpage ▮▮▮▮ before the alleged wrongful conduct. Against this backdrop of lean facts, assumptions, and Uber's consistent efforts to muddy the scant record, Uber seeks to subject Subscriber to a significant invasion of privacy and reputational harm. Absent a stay, Uber has made plain that it intends to publicly connect Subscriber to its highly publicized security breach without any evidence that Subscriber did anything wrong, and without any basis to name Subscriber as John Doe 1. The law does not support such a significant invasion of Subscriber's rights, and the motion to stay should be granted.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Subscriber will be irreparably harmed absent a stay;
2. Whether the stay will injure Uber;
3. Whether Subscriber has shown that Subscriber is likely to succeed on the merits; and
4. Whether the public interest lies in a stay.

## III LEGAL STANDARD

Under Federal Rule of Civil Procedure 62 and the Court's inherent power, this Court has the authority to stay pending appeal any of its orders, including an order denying a motion to quash a

third party subpoena.  A court considers the following four factors when deciding to stay an order pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008).  The first two factors are analyzed "on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Golden Gate Rest.*, 512 F. 3d at 1116 (internal citations and quotations omitted).  Courts also "consider where the public interest lies separately from and in addition to whether the application [for stay] will be irreparably injured absent a stay." *Id*.

## IV.    THE ORDER SHOULD BE STAYED PENDING APPEAL

### 1.    **Subscriber is Likely to Succeed on the Merits**

Subscriber is likely to succeed on the merits for any of four reasons: (i) the Court mistakenly broadened the standard for early discovery; (ii) the Court's Order relies upon inferences and facts that either are wrong or not in the record; (iii) the Court misallocated the burden of proof; and (iv) the Court did not properly account for the privacy interests imperiled by Uber's early discovery request.

#### a.    *Legal Error*

This Court misinterpreted the legal standard governing the availability of early discovery, and that legal determination will receive no deference from the Court of Appeals. *See United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc) ("[T]he first step of our abuse of discretion test is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested.  If the trial court failed to do so, we must conclude it abused its discretion.").  The Court erroneously applied what amounts to the "reasonable suspicion" standard required for the government to issue a grand jury subpoena.  But that is not the standard here, and for good reason.

Instead, the standard for early discovery is "akin to the process used during criminal investigation to obtain warrants." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 579 (N.D. Cal. 1999).  Civil early discovery is not allowed unless that rigorous standard is met because:

> [t]he requirement that the government show probable cause is, in part, a protection against the misuse of *ex parte* proceedings to invade the privacy of one who has done no wrong. A similar requirement is necessary here to prevent abuse of this extraordinary application of the discovery process . . . .

*Id.* at 579. The Court ignored this standard, finding only that Uber's suspicions about Subscriber were "reasonable" or "plausible." Order at 7. Those findings are insufficient to satisfy a probable cause standard. The looser standard applied by the Court, at Uber's urgings, permits precisely the kind of discovery abuse that courts in the Ninth Circuit routinely deny. *See, e.g.*, *Hard Drive Prods., Inc. v. Does 1-90*, 2012 W.L. 1094653 at * 2 (N.D. Cal. March 30, 2012); *Boy Racer, Inc. v. Does 1-52*, 2011 WL 7402999, at *3 (N.D. Cal. Sept. 13, 2011).

Early discovery is not to be used to conduct an investigation based on hunches or suspicions. It may only be used to identify someone whom a plaintiff knows committed a wrong but cannot serve with process because plaintiff does not know the person's name or other identifying information. *Columbia Ins.*, 185 F.R.D. at 575-76 (plaintiff knew named defendants committed the wrong, but did not know sufficient identifying information to serve them with process); *Wakefield v. Thompson,* 177 F.3d 1160, 1162 (9th Cir. 1999) (plaintiff inmate knew which guard deprived him of civil rights, but did not have his identity to be able to serve him with process); *Gillespie v. Civiletti,* 626 F.2d 637, 642 (9th Cir. 1980) (plaintiff knew which jail facilities violated his rights, but did not know the names of the superintendents of those facilities).

Uber concedes that there is no evidence that Subscriber's IP address committed the May 12, 2014 download at issue. Order at 2. In other words, this is not a case in which Uber knows that the subpoenaed IP address is the wrongdoer, and just needs to know the identity behind the IP address to name John Doe. In fact, quite the opposite: Subscriber's IP address is *not* the IP address that accessed Uber's database on May 12, 2014. Nor has Uber alleged that the Comcast Subpoena will provide it with sufficient information to substitute Subscriber for John Doe 1. Order at 8. Moreover, Comcast cannot produce the information that Uber would need to connect Subscriber's IP address to the IP address that did the May 12, 2014 download because Comcast does not maintain information relating to its customers' internet activity. Kollios Decl., Ex. A; Dkt. 38-1 at ¶ 7.

Finally, the Court summarily, and incorrectly, dismissed Subscriber's argument that early discovery should not be allowed in these circumstances because it is merely the first step in what is likely to be a long and intrusive discovery process. In so ruling, the Court ignored case law from this district holding that early discovery should not be permitted in such circumstances. *See, e.g., Boy Racer, Inc. v. Does 1-52*, 2011 W.L. 7402999 at *3 (N.D. Cal. Sept. 13, 2011) ("As an 'extraordinary remedy,' expedited discovery may not be granted where the requested discovery clearly would not uncover the identities sought."); *Hard Drive Prods., Inc. v. Does 1-90*, 2012 WL 1094653 at *2 (N.D. Cal. March 30, 2012). Instead, based on Uber's suspicions about Subscriber's lawful internet activity, the Order allows Uber to use the process of the court to conduct an investigation in the hope that perhaps further discovery will reveal that Subscriber is John Doe. Whether this Court considers Uber's suspicion as reasonable is inapposite—"reasonable suspicion" is not the standard that Uber must meet to invade Subscriber's privacy.

      b.    *Factual Error*

The Court also made factual findings "without 'support in inferences that may be drawn from the facts in the record,'" which is an abuse of discretion. *Hinkson*, 585 F.3d at 1262. In particular, the Court states that Subscriber's IP address is the *only* IP address that accessed the GitHub page with Uber's security key after it was posted, other than "authorized or automated IP addresses identified by Uber."[1] Order at 6-7 (citing ECF No. 35-6, ¶ 2). That is not supported by the record. Uber's declaration, cited by the Court, states that there are a "████████" of *other* IP addresses that visited the GitHub page prior to May 12, and that Uber has not identified those. In other words, there are a

---

[1] Uber has been intentionally vague about the number of IP addresses that accessed its public GitHub page. Uber declared that there were "████████" of addresses that it could not "identif[y] … or … otherwise explain[]." Uber went on to claim opaquely that Subscriber's was the "only IP address not identified by Uber that accessed the post after the date it was posted"—saying nothing about activity that occurred on the day it was posted. Dkt. 34-1 at ¶ 2. At the July 9 hearing, Uber's counsel acknowledged at least 11 different IP addresses—including some used by its own engineers, some that Uber alleges (without any support) were "associated with bots," at least one "associated with an [unidentified] individual" who was using some sort of "automated" script or tool, and two addresses that Uber has tied to Google bots. TR 9:24–13:5.

1  "▇▇▇▇" of other IP addresses that Uber *cannot* exclude on the basis that they are Uber employees or automated bots.[2]  *See also* TR 10:2-20; 28:19-24.

The Court's Order also erroneously rests on the finding that it "was reasonable to investigate and eliminate Uber's software engineers." Order at 7. But there is no evidence of any such investigation, nor could it be limited to only those Uber software engineers who accessed the GitHub website since any number of Uber employees had access to the Uber database key. In addition, the Order contradicts itself on the material issue of whether, immediately before the allegedly unlawful download, the ▇▇▇▇▇▇ IP address visited the GitHub post containing the security key. *Compare* Order at 3:1–3 (repeating Uber's unsupported allegation that the ▇▇▇▇▇▇ IP address visited *different* pages) *with id.* at 3:19–21 (stating that Uber "confirmed that the ▇▇▇▇▇▇ IP address visited the GitHub post" with the key "right before the download"). Uber's papers don't say which of these two accounts is correct (Dkt. 34-1 at ¶ 2), thus forcing the Court to make decisions based not on the record, but based on what "seems plausible." Order at 7:19–22. These factual errors are material because they demonstrate that Uber has failed to identify all steps taken to identify John Doe, failed to offer facts to connect Subscriber to any wrongful conduct, and failed to show there is a reasonable likelihood the Comcast Subpoena will identify John Doe 1—all steps Uber must satisfy to obtain early discovery.

c.  *Misallocation of the Burden of Proof*

The Court's Order also incorrectly flips the burden of proof, requiring Subscriber to show that Uber's suspicions and assumptions are not reasonable. *See, e.g.*, Order at 8 (rejecting Subscriber's argument that anyone could have accessed the security key through cached back-ups, because "there is no evidence that the security key was available in cached back-ups"). But it is not Subscriber's

---

[2] There is no basis to "presume" that these bots should be discounted. Bots are commonly used by hackers to mine sites like GitHub for precisely the sort of security slip-up that Uber committed here. *See, e.g.*, http://www.programmableweb.com/ news/why-exposed-api-keys-and-sensitive-data-are-growing-cause-concern/analysis/2015/01/05 ("Hackers have created an algorithm that continuously searches GitHub for exposed API keys and credentials, AWS credentials in particular."); http://www.devfactor.net/2014/12/30/2375-amazon-mistake/ ("[M]y key had been spotted by a bot that continually searches GitHub for API keys. Amazon AWS customer support informed me this happens a lot recently, hackers have created an algorithm that searches GitHub 24 hours per day for API keys.").

burden to show that someone other than Subscriber could have been responsible – it is Uber's burden to demonstrate the steps it took that would lead a court to find probable cause that Subscriber is John Doe and that the subpoena will reveal information that will identify John Doe (not just Subscriber). *Columbia Ins.,* 185 F.R.D. at 579. Subscriber's arguments demonstrate that Uber failed to meet that rigorous standard.

          d.    *Inadequate Recognition of Vital Privacy Interests*

Congress recognizes that Subscriber has a privacy interest in Subscriber's identity and internet activity. 47 U.S.C. § 551(c)(2)(B). The Court's Order dismisses this privacy interest on the suggestion that Subscriber's "conduct . . . cannot have been legitimate under any scenario." Order at 9. But that confuses John Doe's conduct with Subscriber's lawful visit to a public webpage. Uber has submitted no evidence or even unsubstantiated allegations showing that *Subscriber* violated any law. Contrary to the Court's inference, the record does not support the conclusion that *Subscriber* engaged in unlawful conduct, and therefore the cases relied upon by Uber and the Court are inapposite. *See, e.g., Voltage Pictures, LLC v. Does 1-5000,* 818 F. Supp. 2d 28, 33-34 (D.D.C. 2011); *Wilens v. Automatic Inc.,* 2015 W.L. 498745 at *3-4 (N.D. Cal. Feb. 5, 2015); *Quad Int'l v, Inc. v. Doe,* 2012 W.L. 5868966 at *1 (N.D. Cal. Nov. 19, 2012). In each of these cases, early discovery was granted because the plaintiff showed that the subscriber's IP address was *the one* that committed the wrongful act. Here, Uber concedes that Subscriber's IP address did *not* commit the wrongful act. Under these circumstances, the Comcast Subpoena should have been quashed.

    **2.**    **Subscriber Will Suffer Irreparable Harm**

Subscriber will suffer imminent and irreparable injury without a stay. As explained in more detail below, disclosing Subscriber's identity will result in significant privacy and reputational harm, impose unnecessary litigation costs, and endanger Subscriber's appellate rights by causing the very harm Subscriber's Motion to Quash was intended to prevent

          a.    *Irreparable Harm to Subscriber's Privacy and Reputational Interests*

If this Court denies a stay and requires Comcast to reveal Subscriber's identity now, the Court will unnecessarily harm Subscriber's right to privacy and risk serious harm to Subscriber's reputation. As Uber confirmed at the hearing, Uber seeks to publicly connect Subscriber to the

6     MOTION FOR STAY
Case No.: 3:15-cv-00908 LB

highly publicized data breach as soon as Comcast is ordered to produce Subscriber's identity. TR 32:16-17 ("Certainly if we're able to get the information from Comcast, we should be able to use it."). Uber's intent is particularly injurious here because the only evidence relating to Subscriber is the fact that Subscriber is one of several IP addresses that lawfully visited a public webpage on GitHub. Any other "connection" between Subscriber and the May 12, 2014 download is based solely on Uber's so-called "reasonable" inferences drawn from that one fact, and the Court's presumptions regarding the type of people who would be interested in the driver data.

Importantly, because Comcast does not maintain information regarding its customers' internet usage activity, Comcast's response will not provide Uber with any information connecting Subscriber to the alleged May 12, 2014 download. Kollios Decl., Ex. A. Instead, the only information Uber can obtain from Comcast is Subscriber's identity and payment information. *Id.*; Dkt. 16-1, Ex. A. Subscriber's identity, even if coupled with the "inferences" about Subscriber's viewing of a public GitHub page ▮▮▮▮▮▮▮▮ before the alleged offending download, are not enough to link Subscriber to the wrongful conduct, or to name Subscriber as Doe under Federal Rules of Civil Procedure 9 and 11. Unless the Court's Order is stayed, Subscriber will suffer the precise harm that Rule 11 is designed to prevent – the public naming and shaming of an individual without a sufficient factual or legal basis.

Additionally, if Subscriber's identity is disclosed to Uber, Subscriber will needlessly be dragged into this litigation and potentially other litigation. Once Uber obtains Subscriber's identity, Uber will publicly move this Court for additional discovery against Subscriber. TR 32:16-17. Subscriber should not have to endure the burden and expense of litigation, or the public reputational harm from being connected with this litigation, when there is no legal or factual basis to name Subscriber as John Doe.

At most, Uber has shown that Subscriber visited *public* webpages (as did an undisclosed number of other individuals, in whom Uber is "not interested"). Thus, the Court's Order will require Comcast to disclose information about, and resulting from, Subscriber's "legitimate and valuable right to participate in online forums anonymously or pseudonymously. People are permitted to interact pseudonymously and anonymously with each other so long as those acts are not in violation of the law." *Columbia Ins.*, 185 F.R.D. at 578; *see also SBO Pictures, Inc. v. Does 1-3036*, 2011 WL

6002620 at *2 (N.D. Cal. Nov. 30, 2011); *see In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011). The Court's dismissal of this argument is based on the false premise that Subscriber is John Doe (a premise that even Uber is unwilling to indulge). Order at 9-10 ("The case is not about speech and instead is about conduct that cannot have been legitimate under any scenario."). But Subscriber's internet activity here—visiting a public webpage—is legitimate, protected speech. Absent a stay, Subscriber's well-recognized right to participate in online forums anonymously or pseudonymously will be violated the moment that Comcast produces Subscriber's identity to Uber.

          b.    *Irreparable Harm to Subscriber's Appellate Rights*

This Court should also stay its Order to protect Subscriber's statutory appellate rights. The Order is appealable under the *Perlman* rule, which provides that an order compelling production of materials from a third party may be challenged by an aggrieved litigant (such as Subscriber) because the third party cannot be expected to risk a contempt citation, from which an appeal could otherwise be taken. *See Perlman v. United States*, 247 U.S. 7, 12-13 (1918). The *Perlman* rule amounts to a construction of 28 U.S.C. § 1291, the foundational statute giving rise to appellate rights. *See United States v. Krane*, 625 F.3d 568, 573 (9th Cir. 2010) ("under the *Perlman* rule and 28 U.S.C. § 1291, we have jurisdiction to hear Quellos's claims"). Comcast's compliance with the Order will result in the disclosure of Subscriber's identity—the very act Subscriber's appeal will seek to prevent. Thus, failing to stay the Order would jeopardize Subscriber's statutory appellate rights.

The Order should also be stayed because otherwise the Court of Appeals will be deprived of the opportunity to meaningfully review the Order. The United States Supreme Court has instructed courts about the importance of granting stays in such situations. *Nken v. Holder*, 556 U.S. 418, 421 (2009) ("A stay does not make time stand still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it."). As the Court explained:

> The choice for a reviewing court should not be between justice on the fly or participation in what may be an 'idle ceremony.' The ability to grant interim relief is accordingly not simply '[a]n historic procedure for preserving rights during the pendency of an appeal,' but also a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process.

*Id.* at 427 (citations omitted). Only by granting a stay can this Court preserve a meaningful role for the Court of Appeals.

### 3. A Stay Will Not Harm Uber

Uber will suffer no significant harm from a stay because Comcast will retain responsive information relating to Subscriber and will produce it in the event that the Ninth Circuit denies Subscriber's appeal. Kollios Decl., Ex. B. Moreover, Uber has not demonstrated any urgency in these proceedings. Uber learned of its own security breach and the public posting of the security key in September 2014, but waited over five months before filing a complaint and pursuing any Doe discovery. Dkt. Nos. 1 and 4; *see also Antman v. Uber Technologies, Inc.*, Case No. 15-1175, Dkt. No. 1, ¶ 12. Under these circumstances, Uber cannot claim that it needs the information from Comcast so urgently that Subscriber's appellate and privacy rights should be rendered impotent.

There is nothing to prevent Uber from continuing its investigation into the May 12, 2014 download during the pendency of an appeal. For example, at the July 9 hearing, Uber noted, for the first time and without evidentiary support, that ▮▮▮▮▮, the web address that allegedly committed the offending May 12 download, is "in Sweden" and "they say on their website, we don't keep log files." TR, 11:25-12:2. However, ▮▮▮▮▮'s own website shows that they in fact have servers in several countries in addition to Sweden, including the United States. Kollios Decl., Ex. C. And that website indicates that ▮▮▮▮▮ maintains the username, password, and email addresses of its users. *Id.* at Ex. D. Nothing prevents Uber from requesting a subpoena from ▮▮▮▮▮—the web address that actually committed the offending download—for information about users that were logged in on May 12, 2014 at 9:47 pm, the time that Uber's driver data was allegedly taken. Finally, Uber concedes that its investigation is "continuing," so it can investigate the other IP addresses that accessed the public GitHub page. TR 10: 9-14, 11:10-13.

### 4. There is No Cognizable Public Interest in Subscriber's Identity

The public has no cognizable interest in Subscriber's personal identifying or payment information unless and until there is sufficient evidence to substitute Subscriber in as the Doe defendant—and no such evidence is currently before the Court. To the extent the public has an interest in Uber identifying the individual or entity that committed the offending conduct, the stay

will not prevent Uber from continuing its ongoing investigation into sources like ▆▆▆▆ while Subscriber's appeal is pending. Nor will the stay prevent the production of Subscriber's identifying information if Subscriber's appeal is unsuccessful because Comcast is maintaining the identifying and payment information Uber requested. Kollios Decl., Ex. B. But until Subscriber's appeal is resolved, the public's interest lies instead in protecting individuals' rights to proceed on the internet anonymously or pseudonymously, *see supra* at pp. 7-8, and in keeping Subscriber's personal information confidential.

## VI. CONCLUSION

For the foregoing reasons, the Court should stay its July 20, 2015 Order Denying Subscriber's Motion to Quash pending appeal.

Dated: July 31, 2015

BOERSCH SHAPIRO LLP

 /s/Martha Boersch
Martha Boersch

Attorney for Subscriber