PERKINS COIE LLP
JAMES G. SNELL (SBN 173070)
JSnell@perkinscoie.com
JULIE E. SCHWARTZ (SBN 260624)
JSchwartz@perkinscoie.com
3150 Porter Drive
Palo Alto, CA  94304
Telephone:   650.838.4300
Facsimile:    650.838.4595

Attorneys for Plaintiff
Uber Technologies, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Uber Technologies, Inc.,<br><br>                    Plaintiff,<br><br>     v.<br><br>John Doe I, an individual,<br><br>                    Defendant. | Case No. 3:15-cv-00908 LB<br><br>**PLAINTIFF UBER TECHNOLOGIES, INC.'S OPPOSITION TO SUBSCRIBER'S MOTION TO STAY PENDING APPEAL**<br><br>Date:       September 10, 2015<br>Time:      9:30 am |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1
II. RELEVANT BACKGROUND .......................................................................................... 2
    A. Uber Files This Lawsuit And Moves For Early Discovery....................................... 2
    B. Subscriber Moves To Quash The Comcast Subpoena, And The Motion Is Denied. 3
    C. Subscriber Files A Notice Of Appeal And Moves To Stay This Action. ................ 5
III. ARGUMENT ..................................................................................................................... 5
    A. Subscriber Has Not Met Their Burden To Show A Stay Is Proper. ........................ 5
        1. Subscriber's Appeal is Not Likely to Succeed on the Merits. ....................... 5
            (a) The Court Did Not Commit Legal Error. ......................................... 6
                (i) The Court applied the correct standard for early discovery. 6
                (ii) The Court properly exercised its discretion in granting early discovery. ...................................................................................... 7
            (b) Subscriber Has No Privacy Interest Or Right to Remain Anonymous. ............................................................................................. 9
            (c) The Court Did Not Misallocate the Burden of Proof. .................... 11
        2. Subscriber Will Not Suffer Irreparable Harm. ........................................... 11
            (a) There is no irreparable harm to Subscriber's privacy or reputation. ............................................................................................... 11
            (b) Harm to Subscriber's appellate rights is not irreparable harm. ...... 12
            (c) Litigation costs do not constitute irreparable injury. ..................... 12
        3. Uber Will Suffer Irreparable Injury If the Court Imposes A Stay. ............. 13
        4. The Public's Interest in Timely Resolution of Criminal Matters Outweighs Subscriber's Need For a Stay. ..................................................................... 13
IV. CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Antman v. Uber Technologies, Inc.*,
  No. 15-1175 (N.D. Cal. filed Mar. 12, 2015) .................................................................... 14

*Boy Racer, Inc. v. Does 1-52*,
  No. 11–CV–2329–PSG, 2011 WL 7402999 (N.D. Cal. Sept. 13, 2011) ............................ 9

*Boyd v. City & County of San Francisco*,
  576 F.3d 938 (9th Cir. 2009) .............................................................................................. 6

*Braun v. Primary Distrib. Doe No. 1*,
  No. 12-5812 MEJ, 2012 WL 6087179 (N.D. Cal. Dec. 6, 2012) ....................................... 6

*Briggs & Stratton Corp. v. Local 232, Int'l Union*,
  36 F.3d 712 (7th Cir. 1994) .............................................................................................. 13

*Chevron Corp. v. Donziger, et al.*,
  No. 12–mc–80237 CRB (NC), 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ........ 9, 10, 11

*Columbia Ins. Co. v. seescandy.com*,
  185 F.R.D. 573 (N.D. Cal. 1999) ................................................................................... 7, 9

*F.T.C. v. Ameridebt, Inc.*,
  No. C-0580253, 2006 WL 618563 (N.D. Cal. Mar. 13, 2006) ..................................... 5, 13

*G.N. Iheaku & Co. Ltd. v. Does 1-3*,
  No. C 14-02069 LB, 2014 WL 2759075 (N.D. Cal. June 17, 2014) .................................. 6

*Hard Drive Prods., Inc. v. Does 1-118*,
  No. C 11–01567 LB, 2011 WL 5416193 (N.D. Cal. Nov. 8, 2011) ................................... 9

*In re Grand Jury Subpoena of Connelly*,
  8 F.3d 106 (9th Cir. 1994) ................................................................................................ 12

*In re Nat'l Mortg. Equity Corp. Mortg. Pool Cert. Lit.*,
  857 F.2d 1238 (9th Cir. 1988) .......................................................................................... 12

*Latta v. Otter*,
  771 F.3d 496 (9th Cir. 2014) ............................................................................................ 12

*Mattel, Inc. v. Walking Mountain Prods.*,
  353 F.3d 792 (9th Cir. 2003) .......................................................................................... 6, 8

*Millennium TGA, Inc. v. Does 1-21*,
  No. 11-2258 SC, 2011 WL 2976883 (N.D. Cal. July 22, 2011) (same) ............................ 7

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................................... 5

*OpenMind Solutions, Inc. v. Does 1–39*,
  No. 11–3311, 2011 WL 4715200 (N.D. Cal. Oct.7, 2011) ................................................ 7

*Payne v. Exxon Corp.*,
    121 F.3d 503 (9th Cir.1997) ................................................................................................ 8

*Perlman v. United States*,
    247 U.S. 7 (1918) ............................................................................................................ 5, 12

*SEC v. CMKM Diamonds, Inc.*,
    656 F.3d 829 (9th Cir. 2011) ............................................................................................. 13

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
    208 F.R.D. 273 (N.D. Cal. 2002) ........................................................................................ 6

*Skout, Inc v. Jen Processing, Ltd*,
    No. 14-CV-02341-JSC, 2015 WL 224930 (N.D. Cal. Jan. 15, 2015) ................................. 7

*Speiser, Krause & Madole P.C. v. Ortiz*,
    271 F.3d 884 (9th Cir. 2001) ............................................................................................... 6

*U.S. v. Washington*,
    20 F.Supp.3d 986 (W.D. Wash. 2013) ................................................................................ 5

*Uber Techs., Inc. v. Doe*,
    No. C 15-00908 LB, 2015 WL 1205167 (N.D. Cal. Mar. 16, 2015 ................................ 3, 8

*Uber Techs., Inc. v. Doe*,
    No. 15-CV-00908-LB, 2015 WL 1926291 (N.D. Cal. Apr. 27, 2015) ................ 2, 8, 11, 13

*Uber Techs., Inc. v. Doe*,
    No. 3:15-CV-00908-LB, 2015 WL 4451372 (N.D. Cal. July 20, 2015) ................ 4, 7, 8, 14

*United States v. Griffin*,
    440 F.3d 1138 (9th Cir. 2006) ........................................................................................... 12

*United States v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) ..................................................................................... 6, 8, 9

*Voltage Pictures v. Does 1-64*,
    No. 3:13-CV-58, 2013 WL 2897977 (E.D. Tenn. June 13, 2013) ...................................... 9

**Statutes**

18 U.S.C. 2702(c)(6) .................................................................................................................... 11

47 U.S.C. § 551(c)(2)(b) .............................................................................................................. 11

Fed. R. Civ. P. 9 ........................................................................................................................... 12

Fed. R. Civ. P. 11 ......................................................................................................................... 12

Fed. R. Civ. P. 26(d)(1) ................................................................................................................. 6

## I. INTRODUCTION

After failing to quash a subpoena, Subscriber filed this Motion to Stay as part of their effort to stonewall basic discovery, bring this case to a grinding halt, and avoid answering for misconduct. The law does not permit the extraordinary relief Subscriber's Motion seeks.

To recap, Defendant John Doe I unlawfully accessed Uber's proprietary data using a security key that was posted on the GitHub website. Subscriber accessed that security key close in time to the data breach. In addition, Subscriber's IP address was the only one that accessed the GitHub website after the date it was posted and did not match what Uber's initial investigation identified as a "bot" or Uber employee IP address. For those (and other) reasons, it is reasonably likely that the Comcast discovery will confirm the identity of John Doe I. Accordingly, Uber issued a subpoena to Comcast seeking Subscriber's identifying and other information. This Court has twice properly found that information responsive to the subpoena is reasonably likely to lead to the identity of the individual who stole Uber's confidential information.

Against that backdrop, Subscriber has satisfied *none* of the four requirements necessary to support the request for a stay.

*First*, Subscriber is not likely to succeed on the merits because the Court properly exercised its broad discretion in determining that Uber met the "good cause" standard for early discovery. Subscriber's primary argument to the contrary – that the law required the Court to impose a search warrant standard – lacks any support, which is why Subscriber fails to cite a single case applying that test under these circumstances.

*Second*, Subscriber offers no persuasive argument, let alone evidence, that supports Subscriber's claim that Subscriber will suffer irreparable harm absent a stay. Contrary to Subscriber's assertion, allowing the discovery would impinge no right to privacy because the law is clear that Subscriber has no privacy interest in their IP address. Further, the possibility of potential litigation costs (which Subscriber is inflating with this Motion and related appeal) is not a cognizable irreparable harm. What is more, Subscriber's appellate rights cannot justify the remarkable relief sought because Subscriber has no right to an interlocutory appeal. Further, as the Court earlier noted, Uber's interest in investigating the allegations outweigh any privacy

interest. Finally, if Subscriber was, in fact, truly concerned about preserving anonymity—rather than delaying proper discovery—Subscriber could have sought a protective order addressing their concerns.

***Third***, Uber, in contrast, will suffer irreparable harm if a stay is granted. The information sought in the Comcast Subpoena is a key part of Uber's investigation, an investigation that will be needlessly delayed if the Court imposes a stay. In addition, the perpetrator of the download has a strong incentive to destroy potential evidence. Each day of delay risks such destruction. Likewise, ***a stay may prevent Uber from identifying third parties that have evidence and directing those third parties to preserve such evidence***. Thus, each day Subscriber thwarts Uber's efforts to obtain fundamental discovery, the risk of spoliation increases.

***Fourth***, the public will also suffer harm should the Court issue a stay. *Uber Techs., Inc. v. Doe*, No. 15-CV-00908-LB, 2015 WL 1926291, at *4 (N.D. Cal. Apr. 27, 2015) ("*Uber II*") (noting that "Uber seems moved equally to redress crime as to seek recompense through civil remedies" and that "Uber's lawsuit would benefit wider society as well as benefiting Uber"). Moreover, a stay will not only delay this case, but potentially could delay the *Antman* consumer class action as well. Indeed, John Doe I is a relevant party in the *Antman* case because he bears ultimate responsibility for the breach. The public has an interest in identifying the individual that committed the data breach.

For each of these reasons, the Court should deny Subscriber's Motion to Stay Pending Appeal ("Motion").

## II. RELEVANT BACKGROUND

**A.  Uber Files This Lawsuit And Moves For Early Discovery.**

Uber is a technology company that has developed a smartphone application that connects drivers and riders in cities all over the world. (Dkt. No. 1 ¶ 5.) Uber maintains internal database files with information about the drivers who use its application and closely guards the contents of those files. (*Id.* ¶¶ 6-7.) Accessing them requires a unique security key that is not intended to be available to anyone other than certain Uber employees, and no one outside of Uber is authorized to access the files. (*Id.* ¶ 7.)

On or around May 12, 2014, John Doe I used the unique security key to access and download Uber database files containing proprietary information from an Internet protocol ("IP") address not associated with an Uber employee and otherwise unknown to Uber. (*Id.* ¶ 8.) Uber has information that the person who downloaded the files accessed certain posts on the GitHub website. (Dkt. No. 4-2 ¶ 3.)

On February 27, 2015, Uber filed the Complaint in this action concurrently with its first *Ex Parte* Motion for Expedited Discovery ("First Motion"), which requested discovery from GitHub regarding access to the subject posts on its website. (Dkt. No. 1.) On March 16, the Court granted Uber's First Motion, finding that good cause existed for Uber's discovery to GitHub. *Uber Techs., Inc. v. Doe*, No. C 15-00908 LB, 2015 WL 1205167 (N.D. Cal. Mar. 16, 2015) ("*Uber I*").

GitHub produced information responsive to the subpoena indicating that someone used an IP address registered to Comcast to access relevant posts on GitHub. On April 8, 2015, Uber filed its Second *Ex Parte* Motion for Expedited Discovery ("Second Motion") for information related to that IP address. (Dkt. No. 16.) On April 27, 2015, the Court granted Uber's Second Motion, finding good cause for Uber to propound additional discovery on GitHub and Comcast. *Uber II*, 2015 WL 1926291 at *1.

For the Comcast Subpoena, the Court authorized disclosure under 47 U.S.C. § 551(c)(2)(B), which requires a cable operator to give notice to an affected party prior to disclosure of personally identifiable information. *Id.* at *4.

**B.      Subscriber Moves To Quash The Comcast Subpoena, And The Motion Is Denied.**

On May 29, 2015, Subscriber moved to quash the Comcast Subpoena. (Dkt. No. 24.) The Comcast Subpoena seeks (1) the identity of Subscriber, (2) whether Subscriber accessed ▮▮▮▮▮ or the IP address used to perform the illegal download from March 11, 2014 to May 13, 2014, (3) whether Subscriber accessed ▮▮▮▮▮ or the IP address used to perform the illegal download on May 12, 2014 at the time the download was performed, (4) the identity of any user or machine who accessed the GitHub pages on which the secret key was posted and (5) payment information related to the Comcast IP account.

On July 20, 2015, following briefing and oral argument, the Court denied Subscriber's motion to quash and confirmed, again, that good cause exists for the early discovery to Comcast. *Uber Techs., Inc. v. Doe*, No. 3:15-CV-00908-LB, 2015 WL 4451372 (N.D. Cal. July 20, 2015) ("*Uber III*"). In rendering its decision, the Court relied on the following facts:

- Uber maintains internal database files with information about the drivers who use its application. (Dkt. No. 1. ¶ 6.)

- Uber closely guards the contents of these internal database files. (*Id.* ¶ 7.)

- Accessing Uber's internal database files requires a unique security key that is not intended to be available to anyone other than certain Uber employees, and no one outside of Uber is authorized to access the files. (*Id.* ¶ 7.)

- On or around May 12, 2014, John Doe I used the unique security key to access and download Uber database files containing proprietary information from an Internet protocol ("IP") address not associated with an Uber employee and otherwise unknown to Uber. (*Id.* ¶ 8.)

- Uber is informed and believes that the person who downloaded the files accessed certain posts on the GitHub website. (Dkt. No. 4-2 ¶ 3.)

- Information produced by GitHub indicates that someone used an IP address registered to Comcast to access those posts. (Dkt. No. 16-1 ¶¶ 3-4.)

- There are ▮▮▮▮▮ IP addresses that visited the GitHub webpages before the May 12 download that Uber has not identified as associated with Uber users or are otherwise explained (e.g., automated indexing by Google). (Dkt. 35-6 ¶ 2.)

- Subscriber visited the Github post on ▮▮▮▮▮, and is the only IP address not identified by Uber that accessed the Github post [containing the secret key] after the date it was posted. (*Id.*)

- The person who used the secret key to download Uber's files on May 12, 2014 apparently tried to cover their tracks by using an IP address from ▮▮▮▮▮▮▮▮▮▮. (*Id.*)

- The ▮▮▮▮▮m IP address visited Uber posts on GitHub's website on May 12, 2014, right before the illegal download occurred. (*Id.*)

*Id.* at *1-3. The Court noted that certain facts were confirmed by counsel at the July 9, 2015 oral argument (*id.* at *2), but expressly stated that it was not relying on these representations that were unsupported by declaration. *Id.*

The Court stayed its order until July 31, 2015 to allow subscriber to file a notice of appeal and move to stay the case pending the appeal. *Id.* at *7. The Court specified that the case will be stayed until the Court addresses any motion to stay. *Id.*

**C.  Subscriber Files A Notice Of Appeal And Moves To Stay This Action.**

On July 31, 2015, Subscriber filed a notice of appeal, relying on the rule set forth in *Perlman v. United States*, 247 U.S. 7 (1918) ("*Perlman*"), and moved to stay the case. (Dkt. Nos. 54-56.)

### III.  ARGUMENT

**A.  Subscriber Has Not Met Their Burden To Show A Stay Is Proper.**

In order to obtain a stay pending appeal, the appealing party must show (1) a likelihood of success on the merits of the appeal; (2) irreparable injury in the absence of a stay; (3) lack of substantial harm to the opposing party from a stay; and (4) no harm to the public interest from the stay. *F.T.C. v. Ameridebt, Inc.*, No. C-058025JSWEDL, 2006 WL 618563, at *1 (N.D. Cal. March 13, 2006); *see also U.S. v. Washington*, 20 F.Supp.3d 986, 1031 (W.D. Wash. 2013). If any factor is not present, the Court must deny a motion to stay. Thus, a stay pending appeal is not a matter of right, even if irreparable injury might otherwise result. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). The party requesting a stay has the burden of showing that circumstances justify the exercise of discretion. *Id.* As set forth below, Subscriber comes nowhere near meeting this burden.

**1.  Subscriber's Appeal is Not Likely to Succeed on the Merits.**

Subscriber's appeal is not likely to succeed on the merits because (1) the Court applied the correct legal rule to Uber's request for leave to serve early discovery on Comcast and (2) the Court's application of the correct legal standard is supported by the record.

The denial of a motion to quash a civil subpoena is reviewed for abuse of discretion. *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003). An abuse of discretion will be found only if the Court of Appeal is firmly convinced that "the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Boyd v. City & County of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009). Put differently, the abuse of

1 discretion standard "means that within substantial margins the district court could be upheld had
2 it determined the issue one way or another." *Speiser, Krause & Madole P.C. v. Ortiz*, 271 F.3d
3 884, 887 (9th Cir. 2001).

4     The first step under abuse of discretion review is to "determine *de novo* whether the
5 [district] court identified the correct legal rule to apply to the relief requested." *United States v.*
6 *Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (*en banc*). If not, the district court abused its
7 discretion. *Id.* at 1262. If the district court applied the correct legal rule, the second step is to
8 "determine whether the trial court's application of the correct legal standard was (1) 'illogical',
9 (2) 'implausible', or (3) without 'support in inferences that may be drawn from the facts in the
10 record'." *Id.* "If any of these three apply, only then [is the Court of Appeal] able to have a
11 'definite and firm conviction' that the district court reached a conclusion that was a 'mistake' or
12 was not among its 'permissible' options, and thus that it abused its discretion by making a clearly
13 erroneous finding of fact." *Id.*

**(a)     The Court Did Not Commit Legal Error.**

        **(i)     The Court applied the correct standard for early discovery.**

17     The Court applied the correct legal standard governing the availability of early discovery.
18 A court may authorize discovery to be taken before the parties' Rule 26(f) conference for "good
19 cause" shown. *See* Fed. R. Civ. P. 26(d)(1); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208
20 F.R.D. 273, 276 (N.D. Cal. 2002); *see also, e.g., G.N. Iheaku & Co. Ltd. v. Does 1-3*, No. C 14-
21 02069 LB, 2014 WL 2759075 (N.D. Cal. June 17, 2014) (granting *ex parte* application to serve
22 Rule 45 subpoenas in order to identify doe defendants for good cause shown); *Braun v. Primary*
23 *Distrib. Doe No. 1*, No. 12-5812 MEJ, 2012 WL 6087179 (N.D. Cal. Dec. 6, 2012) (same);
24 *Millennium TGA, Inc. v. Does 1-21*, No. 11-2258 SC, 2011 WL 2976883 (N.D. Cal. July 22,
25 2011) (same).

26     To determine whether "good cause" exists in this context, Ninth Circuit courts consider
27 whether:

(1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible.

*Skout, Inc v. Jen Processing, Ltd*, No. 14-CV-02341-JSC, 2015 WL 224930, at *2 (N.D. Cal. Jan. 15, 2015) (citing *OpenMind Solutions, Inc. v. Does 1–39*, No. 11–3311, 2011 WL 4715200, at *2 (N.D. Cal. Oct.7, 2011)).

Subscriber ***does not cite a single case***, Ninth Circuit or otherwise, applying a different standard. Subscriber misapprehends *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) as imposing a "probable cause" requirement similar to that in criminal cases. The *Columbia* court merely noted that pre-service discovery is akin to the process used during criminal investigations to obtain warrants. *Id.* at 579. Thus, the *Columbia* court explained, a court must consider whether the plaintiff has standing to pursue an action against the unidentified defendant. *Id.* This requirement is addressed by the third prong of the test, which considers whether the plaintiff's suit could withstand a motion to dismiss. *Id.*

The Court did not, as Subscriber suggests, improperly impose a "reasonable suspicion" standard. Rather, as required by the fourth prong of the test, the Court considered whether there is "a reasonable likelihood that the discovery process will lead to identifying information about defendant that would make service of process possible." *Skout, Inc.*, 2015 WL 224930, at *2. The Court addressed this prong of the test, along with all others, and found that Uber satisfied this element by showing that there is a reasonable likelihood that the subpoena will lead to the identity of John Doe I. *See Uber III*, 2015 WL 4451372, at *3; *see also Uber II*, 2015 WL 1926291, at *1; *Uber I*, 2015 WL 1205167, at *2. Thus, the Court followed the proper test in its decision and did not commit legal error.

    **(ii)  The Court properly exercised its discretion in granting early discovery.**

Applying the correct test, the Court's decision to grant early discovery was not an abuse of discretion. *See Hinkson*, 585 F.3d at 1262. The Court did not make any erroneous factual

findings in granting early discovery. Factual findings underlying a discovery ruling are reviewed for clear error. *Mattel, Inc.*, 353 F.3d at 813 (citing *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir.1997)).

> The Court based its finding of good cause primarily on the following facts:
>
> On May 12, 2014, John Doe I used an ▮▮▮▮▮▮▮▮ IP address to download Uber's driver data base. (Snell Decl., ECF No. 35–6, ¶ 2.) Right before that, the ▮▮▮▮▮▮ IP [address] visited Uber posts on GitHub. (*Id*.) Subscriber's Comcast IP address visited the GitHub page that contained the security key on ▮▮▮▮▮▮. (*Id*.) Besides authorized or automated IP addresses identified by Uber (such as those affiliated with Uber software engineers and bots that do automatic indexing), Subscriber's Comcast IP address is the "only IP address ... that accessed the post [with the security key] after [March 11, 2014,] the date it was posted." (*Id*.)

*Uber III*, 2015 WL 4451372, at *4. Given this contemporaneous access, the Court found a link between the GitHub visits and the unauthorized access and, thus, found a "reasonable likelihood" that the information sought from Comcast would lead to the identity of John Doe I. *Id.*

Subscriber's attempt to confuse the record does nothing to salvage their inherently defective Motion. (Motion at 4:14-5:17). First, the Court relied on the record when it found that Subscriber's Comcast IP address was the only IP address (other than authorized or automated IP addresses) that accessed the Github page after the date the security key was posted. *See Uber III*, 2015 WL 4451372, at *2. Second, Subscriber's allegation that the Court contradicts itself in the Order misunderstands the record. (Motion at 5:6-13). The Court's Order consistently states that the ▮▮▮▮▮▮ IP address visited Github Uber posts immediately before the May 12 download. *Compare Uber III*, 2015 WL 4451372, at *1-2 (noting that the IP address "visited the Uber page on GitHub with driver-data files, not the Uber page with the security key"); *with* (Motion at 5:10-11) (citing *Uber III* but inserting the language "with the key" into the Motion where there is no support in the record for this addition). This supports, rather than contradicts, this Court's holding.

Contrary to Subscriber's claim, the Court was not required to find that that the discovery will result in the information sought. *Boy Racer, Inc. v. Does 1-52*, No. 11–CV–2329–PSG, 2011 WL 7402999, at *3 (N.D. Cal. Sept. 13, 2011) ("There are, of course, no guarantees that

discovery will lead to evidence as expected, and the court does not expect perfect foresight"). Under the "reasonable likelihood" standard, it was sufficient for the Court to find a link between Subscriber's visit to the post and the crime to justify early discovery. *See Columbia*, 185 F.R.D. at 580 (requiring "a reasonable likelihood that the discovery *process* will lead to identifying information about defendant") (emphasis added).

In sum, there is nothing "illogical," "implausible," or "without support" about the Court's conclusion. *Hinkson*, 585 F.3d at 1262. Although Subscriber claims there is no evidence of liability, these arguments are for another day. *See Hard Drive Prods., Inc. v. Does 1-118*, No. C 11–01567 LB, 2011 WL 5416193, at *4 (N.D. Cal. Nov. 8, 2011) ("A general denial of liability . . . is not a basis for quashing the plaintiff's subpoenas and preventing the plaintiff from obtaining the putative defendants' identifying information. That would deny the plaintiff access to the information critical to bringing these individuals properly into the lawsuit to address the merits of both the plaintiff's claims and their defenses") (quoting *Voltage Pictures, LLC v. Does 1-5,000*, 818 F. Supp. 2d 28, 35 (N.D. Cal. 2011)).

### (b) Subscriber Has No Privacy Interest Or Right to Remain Anonymous.

Furthermore, the Court was not required to take Subscriber's purported privacy interest into account in ruling on the motion to quash, and no such right exists here in any case. *See, e.g., Chevron Corp. v. Donziger, et al.*, No. 12–mc–80237 CRB (NC), 2013 WL 4536808 at *9-10 (N.D. Cal. Aug. 22, 2013) (holding that the Doe defendants had no privacy interest in subscriber information, IP addresses and IP logs associated with their email accounts); *Voltage Pictures v. Does 1-64*, No. 3:13-CV-58, 2013 WL 2897977, at *2 (E.D. Tenn. June 13, 2013) (holding that there is no privacy interest in subscriber information because it has already been handed over to the service provider).

Uber seeks identifying information associated with Subscriber's IP address information—not the content of any of Subscriber's communications nor a link between Subscriber's identity and any particular statement. Contrary to their claims, Subscriber has no right to remain anonymous with respect to an IP address in this context. *See Donziger*, 2013 WL 4536808 at *7-8 (subpoenas seeking identifying information associated with IP logs did not implicate

1 anonymous speech rights). In *Donziger*, as here, plaintiff Chevron Corp. sought to obtain identifying information associated with IP logs maintained by an electronic communications service provider. *Id*. The court denied the argument of several subscribers that disclosure would infringe their right to anonymous expressive activity, holding that Chevron sought only "identifying information of the email address owner, as well as information about which computers logged into the email addresses from which internet connections." *Id*. at *6. The court distinguished the action from various Ninth Circuit cases protecting anonymity, noting that in each such case the subpoenaing party sought to link the anonymous subscriber with particular speech, whereas in *Donziger*, subscribers "failed to show that there is an exercise of anonymous speech that Chevron's subpoenas could chill." *Id*. at *8. Subscriber cites no law to support the argument that accessing a post somehow implicates a right to participate in online forums anonymously. *Id.* at *9 (noting that the constitution does not "recognize a generalized right of social association" and that "there must be expressive association by a group organized to engage in speech") (internal citations and quotation marks omitted). Accordingly, the First Amendment simply does not apply to Uber's request for early discovery here and the Court properly declined to apply it.

Nor does Subscriber have any *privacy* right in the sought-after information. Indeed, the court in *Donziger* also held that the subscribers had "no privacy interest in the subscriber information, IP addresses, and IP logs associated with their email accounts . . .[.]" *Donziger*, 2013 WL 4536808 at *10. The court considered federal and state statutory and constitutional law, and determined that in no context could subscribers assert a legitimate expectation of privacy in identifying information associated with their IP addresses and IP logs. *Id*. *Donziger* is again directly on point and weighs against Subscriber's claim. Subscriber cites no authority to the contrary.

Instead, Subscriber claims that Congress has recognized that "Subscriber has a privacy interest in Subscriber's identity and internet activity" in 47 U.S.C. § 551(c)(2)(b). However, this Section simply provides that personally identifiable information may be disclosed by cable

operators[1] pursuant to a court order if the subscriber receives notice. It does not, as Subscriber suggests, find that a subscriber has a blanket privacy interest that precludes early discovery under appropriate circumstances. In its order, the Court expressly followed the procedures outlined in the statute and provided notice to Subscriber. *See Uber II*, 2015 WL 1926291, at *2.

Moreover, an appropriate protective order can address Subscriber's concerns.

### (c) The Court Did Not Misallocate the Burden of Proof.

Finally, there is no indication that the Court improperly shifted the burden of proof to Subscriber. Federal Rule of Civil Procedure 45 governs third party discovery by subpoena. On a motion to quash, the moving party has the burden of persuasion, but the party issuing the subpoena must show the discovery sought is relevant. *Donziger*, 2013 WL 45536808 at *4.

Subscriber argues that the Court shifted the burden of showing that someone else could have been responsible for the crime to Subscriber. However, this was not the issue before the Court. Rather, the issue was whether the subpoena should be quashed because early discovery was improper. The Court properly determined that Subscriber failed to carry the burden of persuasion on this point and that "good cause" existed for discovery under the relevant standards.

### 2. Subscriber Will Not Suffer Irreparable Harm.

Moreover, Subscriber has not shown irreparable harm justifying a stay. Generally, irreparable harm is shown when there are no adequate remedies at law. *See generally Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014).

### (a) There is no irreparable harm to Subscriber's privacy or reputation.

Subscriber's assertion that they will suffer irreparable harm to their privacy or reputational interest similarly fails. First, Subscriber's privacy argument fails for the reasons set forth above. *See* III.A.1.b, above.

Second, as for reputational harm, a defendant has no right to avoid embarrassment or prevent reputational harm as a result of being named in a lawsuit. Our legal system allows civil

---

[1] The Section does not apply to electronic communication service providers, which may disclose personally identifiable information without prior notice to the affected user. See 18 U.S.C. 2702(c)(6); *Donziger*, 2013 WL 45536808, at *6.

1 and criminal litigants to have a fact finder assess responsibility—there is no general right to
2 remain anonymous from that process. Moreover, Subscriber could seek an appropriate protective
3 order to protect Subscriber's privacy interests, if any.

4 Third, in contrast to Subscriber's claim, Federal Rules of Civil Procedure 9 and 11 do not
5 provide a basis for irreparable harm. Neither Rule 9 nor 11 are implicated here, but in any event,
6 Subscriber has remedies under both rules if Subscriber could meet the applicable standards.

7 **(b)** **Harm to Subscriber's appellate rights is not irreparable harm.**

8 Subscriber's argument that a stay will avoid harm to Subscriber's appellate rights is based
9 on the false premise that Subscriber has a right to an interlocutory appeal under the rule set forth
10 in *Perlman*. The appellate court does not have jurisdiction under *Perlman*, however, because it
11 applies only to criminal cases. *In re Nat'l Mortg. Equity Corp. Mortg. Pool Cert. Lit.*, 857 F.2d
12 1238, 1240 (9th Cir. 1988). This is because (1) civil litigation does not have the level of
13 independence that grand jury subpoenas do in criminal cases, which makes the order collateral
14 and thus appealable, and (2) "any unfair use of the information or documents produced as a result
15 of an improper order can be corrected on appeal from final judgment in the case." *Id.*

16 Also, even assuming *Perlman* could apply, its holding is limited to privileged documents,
17 which are not at issue here. *United States v. Griffin*, 440 F.3d 1138, 1141 (9th Cir. 2006) (citation
18 omitted); *see also In re Grand Jury Subpoena of Connelly*, 28 F.3d 106 (9th Cir. 1994)
19 (reviewing de novo for the purposes of privilege claim under Perlman exception); *but see SEC v.
20 CMKM Diamonds, Inc.*, 656 F.3d 829 (9th Cir. 2011) (applying the *Perlman* exception without
21 addressing privilege in the context of a civil SEC enforcement case).

22 In any event, Subscriber's argument that the loss of the ability to appeal would constitute
23 irreparable harm is a rehashing of the argument that disclosure of Subscriber's identity would
24 constitute irreparable harm. Again, there is no privacy interest in Subscriber's identifying
25 information, or any right to anonymity here. Indeed, under Subscriber's logic, every underlying
26 case that is not stayed pending appeal would constitute irreparable harm to the appellant.

27 **(c)** **Litigation costs do not constitute irreparable injury.**

28

Finally, Subscriber's argument that Subscriber will suffer irreparable harm if required to endure litigation costs fails. *F.T.C. v. Ameridebt, Inc.*, No. C-0580253, 2006 WL 618563, at *2 (N.D. Cal. Mar. 13, 2006) (citation omitted). "It, after all, is established that the costs of litigation are not 'irreparable injury.'" *Briggs & Stratton Corp. v. Local 232, Int'l Union*, 36 F.3d 712, 714 (7th Cir. 1994) (quotation omitted). The argument is particularly flawed here where Subscriber is the one imposing unnecessary expense by attempting to obstruct discovery at every turn by, among other things, filing the meritless Motion to Quash, Motion to Stay, and Appeal.

### 3. Uber Will Suffer Irreparable Injury If the Court Imposes A Stay.

Uber, on the other hand, will suffer irreparable harm if the Court grants a stay. Where, as here, a Doe defendant has engaged in criminal misconduct, the risk of spoliation is high. Moreover, while Subscriber hides behind meritless motions and appeals, Uber may not be able to identify third parties who may possess key documents and direct those third parties to preserve those materials. Either of these spoliation risks would justify denying Subscriber's Motion. Taken together, they allow the Court to do so with confidence.

### 4. The Public's Interest in Timely Resolution of Criminal Matters Outweighs Subscriber's Need For a Stay.

As discussed above, Uber seeks redress from criminal activity that both Uber, and the public at large, has an interest in timely resolving. *Uber II*, 2015 WL 1926291 at *4 (noting that "Uber seems moved equally to redress crime as to seek recompense through civil remedies" and that "Uber's lawsuit would benefit wider society as well as benefiting Uber"). John Doe I accessed Uber's systems without authorization and downloaded confidential information, harming Uber. Indeed, Uber is currently defending a related class action that seeks to blame *Uber* for John Doe I's conduct. *See Antman v. Uber Technologies, Inc.*, No. 15-1175 (N.D. Cal. filed Mar. 12, 2015).

Uber has been diligent and deliberate in its investigation in both cases, and as the Court has noted, there is urgency to resolving this matter. The Court has also recognized that John Doe I's conduct outweighs any privacy rights and there is no countervailing privacy interest or right to remain anonymous that "weighs" this factor in favor of Subscriber in any event. *Uber III*, 2015

WL 4451372 at *6 (rejecting Subscriber's claim that the subpoena impinges on First Amendment rights, holding that "this case [is] not about speech and instead is about conduct that cannot have been legitimate under any scenario.").

## IV. CONCLUSION

For the foregoing reasons, Uber requests that the Court deny Subscriber's motion.

DATED: August 14, 2015               **PERKINS COIE LLP**

By: */s/ James G. Snell*
      James G. Snell

Attorneys for Plaintiff
Uber Technologies, Inc.