```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3  Before The Honorable Laurel Beeler, Magistrate Judge
 4
 5  UBER TECHNOLOGIES, INC.,      )
                                  )
 6          Plaintiff,            )
                                  )
 7  vs.                           )   No. C 15-00908-LB
                                  )
 8  DOE I,                        )
                                  )
 9          Defendant.            )
10  _____)

11                                San Francisco, California
                                   Thursday, September 10, 2015
12

13    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
              RECORDING 9:38 - 9:48 = 10 MINUTES
14

15  APPEARANCES:

16  For Plaintiff:
                                  Gibson, Dunn & Crutcher, LLP
17                                555 Mission Street
                                  Suite 3000
18                                San Francisco, California
                                    94105
19                         BY:    MICHAEL LI-MING WONG, ESQ.

20                                Perkins, Coie, LLP
                                  3150 Porter Drive
21                                Palo Alto, California 94304
                           BY:    JAMES G. SNELL, ESQ.
22

23
              (APPEARANCES CONTINUED ON NEXT PAGE.)
24

25
```

*Echo Reporting, Inc.*

```
 1  APPEARANCES:   (Cont'd.)

 2  For Plaintiff:
                                Uber Technologies, Inc.
 3                              1455 Market Street
                                Fourth Floor
 4                              San Francisco, California
                                   94103
 5                         BY:  KEITH D. YANDELL, ESQ.

 6  For Defendant:
                                Boersch, Shapiro, LLP
 7                              1611 Telegraph Avenue
                                Suite 806
 8                              Oakland, California 94612
                           BY:  MARTHA A. BOERSCH, ESQ.
 9
                                Boersch, Shapiro, LLP
10                              235 Montgomery Street
                                Suite 835
11                              San Francisco, California
                                   94104
12
    Transcribed by:             Echo Reporting, Inc.
13                              Contracted Court Reporter/
                                Transcriber
14                              echoreporting@yahoo.com

15

16

17

18

19

20

21

22

23

24

25
```

3

Thursday, September 10, 2015                                    9:38 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK: Calling Civil Action C 15-0908, Uber Technologies, Inc. versus Doe.

Counsel, please state your appearances for the record.

MS. BOERSCH: Good morning, your Honor. Martha Boersch for the Subscriber.

THE COURT: Good morning, Ms. Boersch.

MR. SNELL: Good morning, your Honor. James Snell from Perkins, Coie for Uber. With me Michael Wong from Gibson, Dunn.

MR. WONG: Good morning, your Honor.

MR. SNELL: For Uber.

THE COURT: Good morning.

MR. SNELL: And Keith Yandell, in house at Uber, and Wally Meltcher (phonetic), also in house at Uber.

THE COURT: All right. Good morning to you all.

So I'll tell you what I'm planning to do, and then you can tell me why you disagree. So, you know, I -- my inclination is to grant the stay just because I -- you know, and one of the reasons I kept it on was Ms. Boersch said in her papers that she, you know, sort of pointed out that the subscriber has been under a duty to preserve evidence since receiving notice about the subpoena, and I just wanted you to

4

affirm that, you know, that's -- that's the duty and everything, the discovery landscape will be preserved. Right?

MS. BOERSCH: Absolutely.

THE COURT: Right. And so, you know, look, I did a pretty close reading of the cases when I wrote the order. I think -- you know, I think that that's the way the law sort of has to be. I think it's always interesting to see how even District Court orders misread decisions because they don't read them that carefully. So I do feel like I'm right on the law. And that said, you know, different people could take different views about what the landscape ought to be. It happens all the time. We see it in decisions. Then when I look at the balance of equities, which is not to underestimate yours, I'm not unmindful of the context of why Subscriber is pushing so hard on this issue and that sort of is the -- a part of the -- the reason that my feeling is that the balance factor favors Subscriber even though I know what the standard is, and -- so but I thought I would just keep it on calendar to let you tell me why you really thought I should do something different.

MR. SNELL: Your Honor, we'll surprise you. We really do think something different needs to be done here. This is a serious case.

THE COURT: I know it is.

1        MR. SNELL:  There's related litigation in the
2 Atman (phonetic) case and other proceedings.  The subpoena is
3 very targeted, and I think focusing on the duty of
4 preservation with respect to Subscriber just gets to the tip
5 of the iceberg.  I mean, we filed this case in February.
6 We've been diligently prosecuting it, taking the discovery as
7 the Court has allowed.  We think we're on the cusp of
8 identifying, being able to identify the Defendant here, and
9 the failure to be able to do that at this point could mean
10 that evidence either intentionally or unintentionally,
11 evidence not in the hands of subscriber is lost and a lot of
12 files are deleted or discarded. Social Security information,
13 credit card information may be -- may be discarded, and
14 information from social --
15        THE COURT:  I thought -- I thought it was just
16 driver name and driver license, not Social Security numbers.
17        MR. SNELL:  Your Honor, I'm talking about evidence
18 of the actual --
19        THE COURT:  I see.
20        MR. SNELL:  -- crime.
21        THE COURT:  I see.  I see, whatever happened with
22 the information after it was --
23        MR. SNELL:  And so if we're -- if we're trying to
24 tie up, you know, payment information that Comcast has with
25 other --

1      THE COURT: I see. I see.
2      MR. SNELL: -- information we've obtained or other
3 information we might ask other third parties for and those
4 third parties don't have the information six months, a year,
5 a year and a half from now, we're going to be seriously
6 hampered in the case, and I think what -- what --
7      THE COURT: So what sort of -- so, you know,
8 that's something we could talk about. You know, the reality
9 is there -- you know, we do it in different kinds of cases,
10 but sometimes we have information funneling through one side.
11 You know, you see it all the time in trade secrets cases,
12 right, like before it goes to maybe some kind of a third
13 party person to kind of do a scrub of what the landscape is.
14 Stuff gets produced to one party.
15    I mean, is there a discovery landscape that we could --
16 you know, it's pretty -- you would have other third party
17 subpoena. Subscriber has the ability to get some of the
18 information. Subscriber could get it, and Ms. Boersch could
19 keep it, and then if it's properly the subject of discovery
20 requests, you guys could fight about it later.
21      MR. SNELL: I think the problem is if we don't
22 have the information from Comcast --
23      THE COURT: Right.
24      MR. SNELL: -- there may be discovery we would
25 seek from this Court that we're not able to get --

1            THE COURT:  No, I appreciate that, but --
2            MR. SNELL:  -- at this time.
3            THE COURT:  -- from Comcast you're going to get
4 Subscriber's name and other identifying information, right,
5 credit card information, that sort of thing, whatever payment
6 information?
7            MR. SNELL:  Yeah.
8            THE COURT:  And so I assume -- so, I mean, again,
9 I still -- so one idea is to have the -- negotiate a
10 landscape just for purposes of preserving the field where the
11 Subscriber -- a Comcast subpoena gets produced to Ms.
12 Boersch, and you can look at it and see what's there, and
13 then you can talk in general categories about what the
14 information is.
15       Do you have any objection to that?
16            MS. BOERSCH:  If the -- if Comcast produces, it
17 goes only to me?
18            THE COURT:  Yes.
19            MS. BOERSCH:  I don't think I have an objection to
20 that.  I have to say with respect to Mr. Snell's claims here,
21 he's saying that a stay should be denied because there's
22 evidence not in the hands of subscriber.  Of course, we have
23 -- I don't know what that is, and there's no record of what
24 that is.  So --
25            THE COURT:  Well, I think he's just saying -- I

8

think he's just saying that whatever the -- whatever Comcast produces, you know, in the categories of information, there's some stuff that you already know.  I mean, you've said you're entitled -- you know, I'm just reaching back to the landscape that we talked about in the series of orders that were issued, but there's some stuff Comcast has, and there's some stuff Comcast doesn't.  You could -- I mean, you'll get your production eventually I'm guessing, but in the meantime, you guys could stipulate that the information gets produced only to you, and then you're -- I think what you're saying is there may be stuff you'd want to follow up on, not just the preservation landscape, but your own electronic evidence presumably, whatever the laptop is or computer that's in issue but followup stuff that you might want to do.

And so the issues would be name, address, maybe credit payment information.  And, again, you -- even if -- even if there's a discovery stay, you could propound discovery requests to Ms. Boersch to maintain the status quo.  Again, she wouldn't produce any of it, but it would at least -- it would minimize any prejudice to you.

MR. SNELL:  Yeah.  I think there's two points I'd make, and one is that I think this case is distinguishable from others in that here all we're doing is merely seeking to get the identify of somebody that we can name as a Defendant.

THE COURT:  No, I agree with that.

1          MR. SNELL:  And we think that this -- we may reach
2 in our internal investigation a place where we're comfortable
3 doing that, but we think having the information from Comcast
4 would help us do that.  So not having the information
5 hamstrings us in prosecuting the case.  So it's not just, you
6 know, what can Comcast give to Ms. Boersch and whether she
7 can maintain it, but what Uber can do to prosecute this
8 serious crime and whether there's going to be evidence that's
9 destroyed intentionally or unintentionally during the wrong
10 -- potentially wrong time period while an appeal is pending.
11      The other thing I'd note is that there's other ways to
12 solve Subscriber's issues.  One issue they did not seek to
13 move anonymously in this case.  That's something that could
14 be done that would allow Uber to prosecute its claims and
15 save them the embarrassment that they claim would result from
16 being named as a defendant if -- if that were the case.
17 So --
18          THE COURT:  I'm not sure the legal standard would
19 really favor that.  I mean, one of the things we've talked
20 about along the way was just appearing as Subscriber for now
21 didn't mean that it was going to be anonymous, and I think
22 that's something you said in one of your earlier rounds of
23 papers.
24      Okay.  Now I understand the arguments.  I'm not -- I'm
25 not unsympathetic to them, and -- and I -- I just --

1          MS. BOERSCH:  Your Honor, we were willing -- as I
2 said, we were willing to have the information produced to us,
3 and -- and that would decline for us the scope of our duty to
4 preserve evidence, and we're more than happy to do that.
5 We've been willing to do that all along.
6          THE COURT:  And so -- and the scope of your duty
7 to preserve might be enhanced by whatever information Comcast
8 has.
9          MS. BOERSCH:  Right.
10         THE COURT:  Presumably that's information you
11 already know because you're representing Subscriber, but, for
12 example, whatever followup information might be from there.
13         MS. BOERSCH:  Okay.
14         THE COURT:  So anything else?
15         MR. SNELL:  Well, just to respond to that, I mean,
16 we -- if we were able to identify the Joe Defendant and take
17 a deposition, we may find all sorts of sources of
18 information, sources of discovery that we would want to take.
19 We don't know those sources right now.  So having this appeal
20 protracted --
21         THE COURT:  No, I understand.
22         MR. SNELL:  -- hamstrings the entire case.
23         THE COURT:  I understand.  I understand.  Again, I
24 don't know what the landscape is, why the information was
25 taken and how it was used, I mean, aside from, you know,

1 guesses, and I see your point, which is that Ms. Boersch
2 isn't going to necessarily be helpful there because just
3 helping you, that followup would necessarily implicate
4 perhaps Subscriber's actual identity, and so that becomes
5 problematic.  I understand that, but it does -- it does at
6 least define the preservation landscape.  So I would say I
7 would recommend that you go ahead and have the information
8 produced to Ms. Boersch in the interim.  I -- I -- I just --
9 I'll take the matter under submission.  I'll think about it a
10 little bit more today, but I am inclined to grant the stay.
11 Okay.  Thank you.
12          MR. SNELL:  Thank you, your Honor.
13          MS. BOERSCH:  Thank you, your Honor.
14      (Proceedings concluded at 9:48 a.m.)
15
16
17
18
19
20
21
22
23
24
25

12

1 <u>CERTIFICATE OF TRANSCRIBER</u>

2

3     I certify that the foregoing is a true and correct
4 transcript, to the best of my ability, of the above pages of
5 the official electronic sound recording provided to me by the
6 U.S. District Court, Northern District of California, of the
7 proceedings taken on the date and time previously stated in
8 the above matter.
9     I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.
14 *[signature]*
15
16         Echo Reporting, Inc., Transcriber
17           Monday, September 21, 2015
18
19
20
21
22
23
24
25